(No. 31717.—

M. A. LIPSCHULTZ *et al.,* Appellees, *v.* R. I. ROBERTSON *et al.,* Appellants.

*Opinion filed November 27, 1950.*

JEROME JOHNSON, and ERWIN M. PEARL, both of Chicago, for appellants.

JACK EDWARD DWORK, of Chicago, (HARRY G. FINS, of counsel,) for appellees.

Mr. CHIEF JUSTICE SIMPSON delivered the opinion of the court:

This case is before us on a certificate of importance granted by the Appellate Court to review its judgment, by a divided court, reversing one of the municipal court of Chicago in favor of the appellants in an action for the recovery of rent. Judgment for rent was entered in the Appellate Court.

The appellees, M. A. Lipschultz, Isidore Lipschultz and Annette Coven, doing business as 745 West Van Buren Street Building, as landlords, took judgment by confession on a lease against the appellants, R. I. Robertson and Lee Stremlau, doing business as Precision Electric Company, as tenants, for $720 as rent for the months of April and May, 1949. Upon petition of appellants the judgment was vacated, and they were allowed to defend. They pleaded the ownership of the property in the city of Chicago, notice by the city of Chicago to vacate the premises, and actual vacation of the premises pursuant thereto. The sufficiency of the notice to vacate is questioned by appellees. The case was tried before the court without a jury, upon a stipulation of facts.

The facts disclose that the second floor of the premises in question was leased by appellees to appellants for a term beginning November 1, 1946, and ending October 31, 1951;

that two months' rent was deposited in advance and was to be applied to the last two months of the term; that the lease contained the following clause: "In the event of sale of the building, new purchaser may cancel this lease by giving (60) days' notice in writing to the lessee;" and that the city of Chicago acquired title to the building by warranty deed from the appellees bearing date September 30, 1948.

On October 25, 1948, the commissioner of subways and superhighways of the city sent a letter to the appellants which read:

"Our program of construction of the Northwest Route in which the property you now occupy at the above address is located, will require the removal of all buildings in this area early in 1949.

"We are advising you of our plans now in order that you will have additional time to relocate before formal demand is made for the building.

"We are rapidly acquiring property in this area and each month shows an increase in the number of firms who are looking for new locations. For this reason, we think it will be to your advantage to relocate as soon as possible."

So far as the record shows, this notice was never repudiated or withdrawn by the city. Appellees do not question the right of the city to cancel the lease.

October 27, 1948, the city of Chicago executed a lease to the appellees for the entire building in question for a term beginning November 1, 1948, and ending April 30, 1949. On April 1, 1949, a second lease was executed by the city to appellees for a term commencing May 1, 1949, and ending October 31, 1949. These leases authorized the subletting of the premises by the lessees, but made no reference to the existing relationship between the city and appellants.

March 31, 1949, the appellants wrote a letter to the department of subways and superhighways of Chicago which read:

"Pursuant to your letter of October 25, 1948, setting forth that the removal of all buildings in this area are to take place early in 1949, we have relocated and hereby notify you that the premises occupied by Precision Electric Company will be vacated on or before May 1, 1949.

"We would appreciate your acknowledging receipt of this notice confirming these understandings."

A copy of this letter was also sent to 745 West Van Buren Street Building. April 4, 1949, the department acknowledged receipt of appellants' letter of March 31, 1949, directed them as to the delivery of the keys to the property, and requested that the city be notified one week in advance of the final moving. This letter of acknowledgment indicates that the city still regarded its notice to appellants of October 25, 1948, effective, acquiesced in the contemplated removal and directed to whom the keys should be delivered when the premises were vacated.

Appellees, through letters of their attorney, dated April 2, 1949, April 13, 1949, and May 4, 1949, respectively, advised the appellants, in substance, that the notice of the department was insufficient to terminate the lease, that their lease was not with the city; that no notice had been given to them in any manner cancelling the lease by their proper lessors and that the lease was in force and effect.

Appellees contend that the letter of the commissioner of the department is wholly ineffective to terminate the original lease, for the reason that it specifies no date on which the premises are required to be vacated, nor does it formally demand possession of the premises. In fact, the letter itself precludes the thought that it is a formal demand for possession, when it says: "in order that you will have additional time to relocate before formal demand is made for the building." This letter of the commissioner was written on October 25, 1948, when the city of Chicago was the owner and the appellants were the occupants of the building. It advised the appellants of the city's plans

for the future and suggested that they obtain new quarters and "relocate as soon as possible." In reliance on that letter appellants obtained new quarters, vacated the premises in question and delivered the keys as directed by the city.

When the appellees conveyed the property to the city of Chicago by their warranty deed of September 30, 1948, reserving nothing to themselves, they conveyed the lease and the right to receive unaccrued rentals. In *People ex rel. Hargrave* v. *Phillips,* 394 Ill. 119, we quoted with approval the language in *State* v. *Royal Mineral Ass'n,* 132 Minn. 232, as follows: "Unaccrued rents are not personal property. They are incorporeal hereditaments. They are an incident to the reversion and follow the land. [Citations.] They pass with a sale or devise of the land. [Citations.] * * * In fact, although separable from the reversion they are until such separation a part of the land." We further said: "Under the foregoing well-settled principles a deed by appellee conveying the land upon which the lease was given would convey the lease and the right to receive unaccrued rentals."

It therefore appears that upon delivery of their deed the appellees' interest in this property was fully and completely terminated. In the interim between their deed to and their lease from the city, appellees were utter strangers to the property, the appellants were in possession under a written lease entitling them to sixty days' notice of cancellation, and the city of Chicago was the owner and entitled to give the notice.

This brings us to the question as to whether or not the short term leases by the city to appellees operated as an assignment to the latter of the city's rights under the original lease to appellants. That there was no formal written assignment of such rights is apparent from the record and there is no showing as to whom rentals were paid by appellants after said leases became effective. The appellees, as

lessees from the city of Chicago, acquired no rights superior to those of their lessor. By its letter of October 25, 1948, the city advised the appellants, in effect, that their rights under the original lease would terminate as soon as they were able to relocate, and further advised them to relocate as soon as possible. At the time the notice was given, as we have already observed, appellees had no interest in the property, or in the original lease. They take the position that the original lease was binding upon the appellants in their favor notwithstanding what had transpired between their purchaser and appellants and the further fact that nothing had been done to re-establish that lease. They cite no authority for this position.

Appellees cannot repudiate the action of the city in the giving of the notice to vacate and appellants were justified in acting upon that notice.

The Appellate Court apparently adopted the view of the appellees that the notice given by the city was no notice at all, for the reason that it did not specifically terminate the lease and make demand for possession by a time certain. These requirements may be necessary in a statutory notice where the landlord is seeking to evict his tenant and the tenant is resisting the surrender of possession, but where, as here, the tenant is voluntarily surrendering possession, an entirely different situation exists. The sixty-day provision was for the benefit of the original lessors, so that their purchaser might obtain possession within sixty days if desired. It was likewise for the benefit of the lessees, who were entitled to sixty days' notice to vacate in event of a sale by the original lessors. The latter did sell, and their grantee, the city of Chicago, elected to notify the tenant, in writing, that they should relocate as soon as possible. So far as the tenant was concerned, a formal demand specifying a time certain could be by him waived. *Neil* v. *Kennedy,* 319 Ill. 75; *Fuchs* v. *Peterson,* 315 Ill. 370; 32 Am. Jur. sec. 837, page 713.

Only the tenant could insist upon sixty days' notice in writing. Had the city informally advised the tenant by word of mouth, or otherwise, that it would like to take possession at a given time, the tenant could have acquiesced without further or additional notice. Appellees' short-term leases from the city were necessarily junior to any rights or obligations which had been established between the city and the appellants. The appellants had the right to waive the formal requirements of the lease for sixty days' notice in writing. This they did and surrendered possession.

For the reasons above stated, the judgment of the Appellate Court is reversed and the judgment of the municipal court of Chicago is affirmed.

*Appellate Court reversed; municipal court affirmed.*