**BALCOR REAL ESTATE HOLDINGS, INC., Plaintiff–Appellee,**

v.

**WALENTAS–PHOENIX CORPORATION and David C. Walentas, Defendants– Appellants.**

No. 95–2440.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 8, 1995.

Decided Jan. 3, 1996.

William E. Rattner (argued), Patrick Francis Solon, Hopkins & Sutter, Chicago, IL, for Balcor Real Estate Holdings, Inc.

Daniel P. Shapiro, David J. Chizewer, Goldberg, Kohn, Bell, Black, Rosenbloom & Moritz, Chicago, IL, Kenneth G. Schwarz, Pamela A. Phillips (argued), Fischbein, Badillo, Wagner & Itzler, New York City, for Walentas–Phoenix Corporation and David C. Walentas.

Before FLAUM, EASTERBROOK, and RIPPLE, Circuit Judges.

EASTERBROOK, Circuit Judge.

Walentas–Phoenix Corporation borrowed more than $23 million from Balcor Real Estate Holdings to buy a commercial office building in Arizona. In addition to the corporate note, Balcor took a deed of trust in the building plus a personal guarantee from David Walentas, the borrower's principal equity investor. We refer to the corporation and the person collectively as "Walentas." Walentas anticipated refinancing the loan but could not, and when a balloon payment came due Walentas agreed to surrender the property in lieu of foreclosure. The transaction closed on January 26, 1993. One day earlier Walentas had received, and cashed, a check for approximately $258,000 from Intel Corporation, the building's tenant, for the February 1993 rent and taxes. Walentas did not tell Balcor about this until after the closing, and when Balcor demanded the prepaid rent Walentas refused to surrender it. This suit under the diversity jurisdiction followed; the loan papers provide that Illinois law governs. The district court granted summary judgment to Balcor and tacked on prejudgment interest of some $29,000 plus $111,000 in attorneys' fees.

Walentas tells us that every prudent lender puts a clause in the agreement addressing the disposition of prepaid rent after a deed in lieu of foreclosure. The omission of such a clause from this transaction means that it is entitled to the money, Walentas asserts. Perhaps cases such as this one show the wisdom of advice to make express provision for the subject—but omission does not mean that one side rather than the other wins. It means instead that the money goes to the person entitled to it under the common law (or, sometimes, Article 2A of the UCC). Illinois has a standby rule for these cases, which controls when the agreement is silent. The rule is that prepaid rents belong to the person who owns the property

during the period the payments cover. *Lipschultz v. Robertson*, 407 Ill. 470, 474, 95 N.E.2d 357, 359 (1950); *Scully v. People*, 104 Ill. 349, 352 (1882). Illinois conceives of prepaid rent as part of the property, like coupons attached to a bond. Balcor owned the property for the entire month of February 1993. It therefore is entitled to the February 1993 rent, unless the contract says otherwise.

■ The only provision in the contract even arguably pertinent to the question is this language:

> There shall be no prorations of taxes or any other items at Closing. Lender shall retain all funds in any tax escrow account or any other account held by Lender relating to the Loan.

To give Balcor any part of the prepaid rent would be a "proration," Walentas maintains. Although that is not an impossible meaning of the word, it is not a common one. Proration at a real estate closing usually means a division of rents, taxes, and loan payments for the month in which the closing occurs. An allocation of six days of January's rent or taxes to Balcor would be a proration; Balcor surrendered that claim by this clause, as Walentas surrendered any claim to prepaid taxes for the final days of January, or any other contents of the tax escrow account. But it would strain language and commercial practice unduly to conceive of turning over a whole month's prepaid rent as a "proration" of that rent. Balcor owned the building in fee simple during February 1993 and was entitled to the whole rent for that month. Intel did not tender any check that had to be prorated; it did not, for example, pay for January through March at one go. Rent was paid by the month; there was nothing to prorate.

■ Extrinsic evidence might show that the real estate business uses "proration" in an idiosyncratic way, or that these parties shared an unusual meaning, but the only extrinsic evidence Walentas offered had to do with a different clause—one that omitted that word, and that was in the end dropped from the agreement. Balcor proposed this language:

> [Walentas] shall pay to [Balcor] in immediately available funds at closing ... all rents (including restoration and repair funds due from Intel) that were both paid to [Walentas] and attributable to time periods after ____ 1, 199__.

Walentas opposed this clause; Balcor deleted it; Walentas says that this entitled it to keep the February rent. Yet the parties' dealings do not disclose a private meaning of "proration." Indeed, this was broader than a standard proration clause. Had the parties agreed on it, and written in the month of closing, then Walentas would have owed Balcor the entire rent for January 1993. Nothing in the negotiating history suggests that Balcor thought that this clause affected rent for months after the closing. Perhaps Walentas interpreted matters otherwise, but in Illinois one party's understanding is irrelevant; only shared meaning counts. *AM International, Inc. v. Graphic Management Associates, Inc.*, 44 F.3d 572, 575–76 (7th Cir.1995); *Skycom Corp. v. Telstar Corp.*, 813 F.2d 810, 814–15 (7th Cir.1987); *Midland Hotel Corp. v. Reuben H. Donnelley Corp.*, 118 Ill.2d 306, 313–14, 113 Ill.Dec. 252, 256, 515 N.E.2d 61, 65 (1987); *Steinberg v. Chicago Medical School*, 69 Ill.2d 320, 331, 13 Ill.Dec. 699, 705, 371 N.E.2d 634, 640 (1977). At all events, it is not Balcor that needed favorable language in the contract. Given the common law of Illinois, Walentas required permission to keep any rent for days after the closing. It got that permission, via the no-prorations clause, through the end of January; it did not get that permission for February. Remaining tidbits from the drafting history are even less helpful to the process of construction, and we do not discuss them.

■ Prejudgment interest is appropriate, and Walentas does not protest; but he does argue that attorneys' fees are unauthorized. Illinois follows the American Rule, under which each side bears its own legal expenses. Although an award of fees might well be justified by the frivolous-litigation exception to that rule, the district court's actual basis was the parties' contract. Section 5(c) provides that Walentas will

indemnify, save, defend and hold [Balcor and its affiliates] harmless from and against any losses, debts, obligations, proceedings, suits, claims, causes of action, damages, costs, expenses (including, without limitation, attorneys' fees and expenses), liabilities, actions or rights of action incurred by [Balcor] as a direct or indirect result of ... any breach or default by [Walentas] under any of the covenants or agreements under this Agreement or any of the Closing Documents. [Walentas's] obligations under this Section 5(c) shall survive Closing for a period of one (1) year.

An obligation to "indemnify" or "defend" implies an action by a third party, Walentas tells us, making § 5(c) irrelevant to a suit between Balcor and Walentas.

Drafting is not the strong suit of § 5(c)'s authors. Indemnity often means recompense of an outlay to a third party; but an insurer will "indemnify" its clients against losses they suffer without a third party's intervention. Restitution, insurance, and general compensation are among the meanings of indemnity. And § 5(c) did not stop there. Walentas is to "indemnify, save, defend and hold [Balcor] harmless" against "losses, debts, obligations, proceedings, suits, claims, causes of action, damages, costs, expenses (including, without limitation, attorneys' fees and expenses), liabilities, actions or rights of action". Perhaps this is just prolix, redundant, reiterative, repetitive, tautological, windy, and wordy. See Bryan A. Garner, *A Dictionary of Modern Legal Usage* 436–37 (2d ed. 1995). Some might think the verbiage excess, nimiety, overabundance, overkill, superfluous, and surfeit. Anyone who fills paper with long strings of words must recognize, however, that readers pick and choose; otherwise what's the point of all that ink? Section 5(c) requires Walentas to "hold [Balcor] harmless ... against any ... expenses (including, without limitation, attorneys' fees and expenses) ... incurred by [Balcor] as a direct or indirect result of ... any breach or default by [Walentas]". Balcor incurred attorneys' fees as a result of Walentas's default; Walentas must compensate (= indemnify, hold harmless) Balcor for its outlay, so that Balcor will be in as good a position as it would have been, had Walentas performed as required. For all the surplusage, *that* is the evident function of § 5(c), which the district court fulfilled by awarding attorneys' fees. The more explicit fee-shifting clause in the deed of trust does not imply a narrow reading of § 5(c); likely it is missing from this agreement because § 5(c) is so capacious.

As for the quantum of fees: appellate review is deferential, cf. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990), and the district court did not abuse its discretion. Courts award fees at the market rate, and the best evidence of the market value of legal services is what people pay for it. Indeed, this is not "evidence" about market value; it *is* market value. Although courts interpolate the word "reasonable" into clauses of this kind, the best guarantee of reasonableness is willingness to pay. Balcor asked Walentas to make good its actual outlays. Although Walentas denies that Balcor got its money's worth, it does not deny that these were real bills that Balcor paid and it does not argue that Balcor's lawyers ran the meter because they thought that Walentas would have to cover the tab. Corporate inside counsel monitor bills submitted by outside counsel; nothing in this record suggests that these bills received less than the usual review. They were deemed commercially reasonable and paid. Having defaulted on its obligations and forced Balcor to incur these costs, Walentas is in no position to complain that it induced Balcor to incur *large* legal costs—especially not when the lengthy discovery into the negotiating history was at Walentas's insistence. By protesting the quantification of fees, Walentas is trying to weasel out of the contract yet again, for the contract requires him to hold Balcor harmless—that is, to make it whole.

Section 5(c) does not distinguish between trial and appellate courts. Balcor therefore is entitled to full compensation for the legal outlays it incurred in defending the judgment. We return the case to the district court so that it may resolve any dispute about the amount of these outlays and enter

a fresh judgment covering all of Walentas's obligations to Balcor. The judgment is affirmed, and the case is remanded for proceedings under this paragraph.