Roger D. KNOTT, Jr., et al., Plaintiffs,

v.

McDONALD'S CORPORATION, Defendant.

No. C–97–20158–JW.

United States District Court, N.D. California, San Jose Division.

Oct. 2, 1997.

Robert M. Einhorn, for Plaintiffs.

Robert H. King, Jr., Sonnenschein, Nath & Rosenthal, Chicago, IL, for Defendant.

## AMENDED ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

WARE, District Judge.

Defendant's motion for summary judgment was heard by the Court on June 16, 1997. Attorney Robert H. King, Jr. appeared on behalf of Defendant and attorney Robert M. Einhorn appeared on behalf of Plaintiffs. Based on all papers filed to date, as well as on the oral argument of counsel, the Court grants Defendant's motion for summary judgment.

## I. BACKGROUND

Plaintiffs are former owners and operators of two McDonald's franchises in Santa Clara County. Plaintiff's complaint contains two claims for relief: (1) breach of the franchise agreement and breach of the covenant of good faith and fair dealing and (2) tortious interference with contract. The complaint arises as a result of Plaintiffs' desire to sell its franchises in 1995. Plaintiffs contend that they had reached an agreement with prospective purchasers for the sale of both franchises but that Defendant McDonald's interfered with the prospective sale, causing Plaintiffs to lose the potential buyers. Although the franchises were sold later in 1996 to other buyers, Plaintiffs contend that the sales price was $650,000.00 less than the price they could have received from the original prospective purchasers in 1995. Plaintiffs have sued Defendant for loss of these potential "profits".

Defendant moves for summary judgment as to both claims contained in Plaintiffs' complaint. With respect to the first claim for breach of the franchise agreement and the covenant of good faith and fair dealing, Defendant contends that Plaintiffs lack standing to assert such claim since they assigned all of their rights in the franchise agreement to the now-owners of the franchises. Defendants

1224

also contend that there is no admissible evidence which supports Plaintiffs' first claim for relief since the original prospective purchasers' declarations unequivocally state that Defendant McDonald's had nothing whatsoever to do with their decision not to purchase Plaintiffs' franchises.

With respect to the second claim for relief, Defendant asserts that there is no evidence to support a claim for tortious interference since all the evidence shows that McDonalds had nothing to do with the potential buyers' decision not to purchase Plaintiffs' franchises. The potential buyers' declaration unrefutably establish such facts.

## II. LEGAL STANDARDS

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed, R. Civ. P. 56(c). The purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses." *Celotex v. Catrett*, 477 U.S. 317 323–324, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323, 106 S.Ct. at 2552. If he meets this burden, the moving party is then entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of his case with respect to which he bears the burden of proof at trial. *Id.* at 322–23, 106 S.Ct. at 2551–52

The non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e) The non-moving party cannot defeat the moving party's properly supported motion for summary judgment simply by alleging some factual dispute between the parties. To preclude the entry of summary judgment, the non-moving party must bring forth material facts, i.e., "facts that might affect the outcome of the suit under the governing law. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 588, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

The court must draw all reasonable inferences in favor of the non-moving party, including questions of credibility and of the weight to be accorded particular evidence. *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 518–19, 111 S.Ct. 2419, 2434–35, 115 L.Ed.2d 447 (1991) (citing *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 588, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *T.W. Elec. Service v. Pacific Elec. Contractors*, 809 F.2d 626, 630 (9th Cir.1987). It is the court's responsibility "to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." *T.W. Elec. Service*, 809 F.2d at 631 "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. However "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356.

## III. DISCUSSION

### A. Claim One– Breach of Agreement

As noted above, Plaintiffs' first claim for relief is based on an alleged breach of the franchise agreement between Plaintiffs and Defendant as well as a breach of the covenant of good faith and fair dealing implied in

such agreement. Defendant moves for summary judgment as to such claim on the bases that Plaintiffs assigned any and all contract rights in such franchise agreement to the buyers of their franchises and that there is no admissible evidence to show that Defendant breached such agreements in any event.

It is undisputed that Plaintiffs signed a document entitled "Assignment and Consent to Assignment of Franchise" on March 1, 1996. This document states that Plaintiffs, as Assignor, "assigns, transfers, and sets over to Assignee all the right, title and interest of Assignor in and to the Franchise subject to the terms and conditions of the Franchise."

■ An assignment transfers from the assignor to the assignee all of the rights, title or interest owned by the assignor in the subject assigned. *Newcombe v. Sundara,* 274 Ill.App.3d 590, 211 Ill.Dec. 68, 654 N.E.2d 530 (1st Dist.1995). Pursuant to Illinois[1] law, a transfer of "all right, title and interest" conveys everything that the assignor owned in the thing assigned and the assignee stands in the shoes of the assignor. *Bishop v. Village of Brookfield,* 99 Ill.App.3d 483, 490, 54 Ill.Dec. 896, 425 N.E.2d 1113 (1981); *Burkes v. McDonald's Corporation,* 1997 WL 28300 (N.D.Ill.1997).

Plaintiffs argue that they have the right to sue Defendant for breach of the franchise agreements, even though they no longer own the franchises, on the bases that they never intended to transfer such right to sue to the new franchise owners and that the *Burkes* case is distinguishable from this action. Neither of Plaintiffs' arguments is persuasive.

■ First, the fact that Plaintiffs harbored an undisclosed intent to sue Defendant after the transfer of ownership of their franchises is insufficient as a matter of law to reserve their ability to maintain such claim herein. *See, Balcor Real Estate Holdings, Inc. v. Walentas–Phoenix Corp.,* 73 F.3d 150, 152 (7th Cir.1996). Plaintiffs' declarations clearly and unrefutably establish that they never disclosed to Defendant or to Defendant's agent that they intended or desired to re-

serve any of their rights to sue under the franchise agreements.

Second, the *Burkes* case is almost identical to this case and, therefore, legally indistinguishable from this action. In *Burkes* a former McDonald's franchise owner filed an action against McDonald's, including a claim for breach of the franchise agreement, after he had sold the franchise to a third party. Burkes claimed that he had been forced by McDonalds to sell the franchise at a lower price than he felt the market would bear. The Illinois court held that Burkes' breach of the franchise agreement claim could not be maintained due to the fact that he had assigned all of his franchise rights under the agreement to the new purchaser.

■ In addition, even assuming that Plaintiffs had not assigned their claim for breach of the franchise agreement to the new purchasers, there is no evidence before the Court that Defendant breached any provision of the franchise agreements. The unrefuted evidence shows that the potential purchasers, Jason and Julie Cartie did not consummate the purchase of Plaintiffs' franchises due to Plaintiffs' own conduct. Plaintiffs have failed to submit any evidence, other than their own speculation and conjecture, that Defendant somehow said or did something to the Carties to dissuade them from purchasing Plaintiffs' franchises. The Carties' Declarations refute such speculation and unequivocally establish that the Defendant had nothing whatsoever to do with their decision not to purchase Plaintiffs' franchises.

Based on the foregoing, the Court grants Defendant's motion for summary judgment as to Plaintiffs' first claim for breach of the franchise agreements/breach of the implied covenant of good faith and fair dealing.

### B. Claim Two—Tortious Interference with Contractual Relations

■ As noted above, the Carties' Declarations clearly establish that the Defendant played no role whatsoever in their decision not to purchase Plaintiffs' franchises. Plaintiffs have failed to submit admissible evidence to the contrary.

---

**1.** The parties agree that Illinois law governs the interpretation of the Franchise Agreement and

Assignment in this instance pursuant to the franchise agreements.

In addition, in order to prevail upon this claim, Plaintiffs must establish that they had a contract with the Carties and that such contract was breached by the Defendant's wrongful conduct. In this case. Plaintiffs had not signed a binding contract with the Carties. The contract for the purchase of the Plaintiffs' franchises contained an addendum which granted the Carties the unequivocal and unreserved right to withdraw from the purchase at any time for any reason with no penalty whatsoever. (See Exhibit A–2 to the Declaration of Jason Cartie).

Further, the Carties state under the penalty of perjury that they did not withdraw from the purchase deal but that it was Plaintiffs who withdrew from the deal. When Plaintiffs later attempted to negotiate a new deal, the Carties did not trust Plaintiffs and decided that they did not want to deal with them. According to the Carties, Defendant played no role whatsoever in the Carties' decision not to purchase Plaintiffs' franchises.

In response to the Carties' Declarations, Plaintiffs have submitted their own Joint Declaration, as well as the Declaration of Carter E. Dickey and the Supplemental Declaration of Roger D. Knott, Jr.[2] These declarations purport to refute the statements made by the Carties that the Defendant was not responsible for their decision not to purchase Plaintiffs' franchises. A close reading of these declarations reveals, however, that Plaintiffs have failed to set forth specific facts showing that there is a genuine issue for trial.

First, the Joint Declaration is devoid of any facts with respect to the alleged interference committed by Defendant. The only potential relevant portion of the Joint Declaration to this issue is the statement that "the Carties seemed to have difficulty believing we were not aware of the extensive required reinvestment list which also mentioned possible restaurant relocation and restaurant offset of our Camden restaurant." This statement, however, is purely the speculative opinion of the Plaintiffs, unsupported by any facts and belied by the Carties' Declarations.

Second, the Supplemental Declaration of Roger D. Knott, Jr. actually supports Defendant's argument that it had nothing whatsoever to do with the Carties' decision not to purchase the Plaintiffs' franchises. That Declaration states that the "Carties did not appear to be confused from my offer to release them from the deal and in fact they appeared to be extremely relieved"... (see Supplemental Declaration of Roger Knott, Jr., page 2, lines 4–5). This statement, made by Plaintiff Roger Knott, confirms the Carties Declarations that the Plaintiffs appeared to withdraw from the deal. Although Roger Knott's Declaration continues and states that the Carties appeared to be relieved "apparently from what McDonald's had told them", there are absolutely no facts to support this statement of conjecture by Mr. Knott.

Third, the Declaration of Carter E. Dickey also fails to controvert the evidence submitted by Defendant in support of this motion. The Declaration clearly states that it was merely Mr. Dickey's impression that Defendant had convinced the Carties not to purchase the Plaintiffs' stores. The Declaration does not state that the Carties made such statement to Mr. Dickey. In fact, the Declaration confirms what the Carties and the Defendant contend was said to the Carties by the Defendant. Neither the Carties nor Defendant deny that the Defendant told the Carties that there was substantial reinvestment needed for the Bascom store; that there was limited or no room for growth and opportunity for them in the San Jose area; that the Camden store might have to be relocated; and that another store might open in the area. Despite being told all of this

---

2. Defendant objects to the submission of the Joint Declaration of Roger and Carol Knott, the Supplemental Declaration of Roger D. Knott, Jr., the Declaration of Roger D. Knott, Jr., and the Declaration of Carter E. Dickey on the basis that these declarations were not attached as Exhibits to the Defendant's copy of the Plaintiffs' Opposition Memorandum. The Court notes that the officially filed copy of the Opposition Memorandum does contain copies of all Declarations, with the exception of the Declaration of Roger D. Knott, Jr. This Declaration was attached to the Plaintiffs' Opposition to the Motion to Strike. Since the Court considered all Declarations in conjunction with this motion to assure itself that no triable issue of fact remained, Defendant's motion to strike the Declarations, as well as the objections thereto, is denied.

information by the Defendant, which the Carties acknowledge they were told, the Carties state that they wanted to purchase the Plaintiffs' stores and would have done so but for the Plaintiffs' own conduct.

Based on this record, the Court finds that there is no triable issue of material fact which remains for trial and that Defendant is entitled to summary judgment on Plaintiffs' claim for tortious interference with contract.

## IV. CONCLUSION

For the reason set forth herein, the Court grants Defendant's motion for summary judgment.