**In re Mae ROLLE, Debtor.**

**Mae ROLLE, Plaintiff,**

**v.**

**CHASE MANHATTAN MORTGAGE CORPORATION and Metropolitan Dade County, Defendants.**

Bankruptcy No. 96–17214–BKC–AJC.

Adversary No. 97–0280–BKC–AJC–A.

United States Bankruptcy Court,
S.D. Florida.

Feb. 20, 1998.

Carolina Lombardi, Miami, FL, for Debtor.

Peter Spindel, Miami, FL, for Chase Manhattan Mortgage Corp.

## MEMORANDUM OPINION

JAMES G. MIXON, Bankruptcy Judge.

This adversary proceeding is before the Court upon the complaint of Mae Rolle ("Debtor") to determine the extent of Chase Manhattan Mortgage Company's ("Chase")

interest in the Debtor's real estate and the value of Chase's secured claim. After a hearing on June 17, 1997, in Miami, Florida, the matter was taken under advisement.

The Court has jurisdiction of this case pursuant to 28 U.S.C. § 1334 & § 157. This is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(K)(1994), and the Court may enter a final judgment in the case. The following shall constitute findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

### FACTS

The Debtor has owned her current residence at 1328 Northwest 71st Street, Miami, Florida, since 1987. On August 27, 1987, the Debtor executed a mortgage in favor of Chase conveying a lien (security interest) in the 71st Street residence described as follows:

Lot 9 Block 7 "Liberty City Homesites"

. . .

Together with all structures and improvements now and hereafter on said land, and fixtures, attached thereon, and all rents, issues, proceeds and profits accruing and to accrue from said premises, all of which are included within the foregoing description and the habendum thereof; also all gas, steam, electric, water and other heating, cooking refrigeration, lighting, plumbing, ventilating, irrigating and power systems, machines, appliances, fixtures and appurtenances, which now are or may hereafter pertain to, or be used with, in, or on said premises, even though they be detached or detachable.

(Pretrial Order, Admitted Fact "H".)

■ The Debtor filed her voluntary petition for relief under chapter 13 of title 11 of the United States Bankruptcy Code on November 12, 1997. Chase filed a proof of claim on January 22, 1997, in the secured amount of $25,789.23, together with interest, penalties, attorneys fees and costs. On March 10, 1997, the Debtor filed a complaint

to determine the value of Chase's interest in her residence and the amount of Chase's secured claim.

At the June 17, 1997, hearing to adjudicate the complaint, both the Debtor and Chase presented expert appraisal testimony as to the value of the Debtor's residence. The Debtor's expert valued the property at $22,000.00, while Chase's expert appraised the property at $24,000.00. Both appraisals were well documented with no significant difference in the methods used or conclusions reached by the two expert opinions. Therefore, the Court fixes the value of the Debtor's residence at $23,000.00.[1] Neither appraiser offered an opinion as to the value of any personal property which might also be subject to Chase's security interest.

The Debtor's testimony at the hearing centered on her receipt of rents and her ownership interest in a kitchen range and refrigerator. She stated that in recent months, her daughter had lived in the residence and paid the Debtor rent in an unspecified amount. The Debtor also said that she had purchased for home use two major appliances, a propane-gas fueled stove and a refrigerator, and she estimated each purchase occurred about five years ago. She said she planned to take these two appliances, but not the accompanying propane gas receptacles, with her if she ever vacated the residence. The Debtor presented no evidence that Chase satisfied state law requirements to perfect a security interest in either appliance under applicable provisions of the Uniform Commercial Code.

### THE ARGUMENTS

The Debtor argues that because Chase's claim exceeds the value of its collateral and the claim is secured by a security interest in collateral in addition to the Debtor's personal residence, the Debtor's chapter 13 plan may reduce the amount of Chase's secured claim to the value of its collateral pursuant to 11 U.S.C. § 506 and 11 U.S.C. § 1322(b)(2).

---

1. While the Court agrees with the view expressed recently by the United States Supreme Court that a split-the-difference approach to valuation is not warranted by the Bankruptcy Code, the two appraisals in the instant case are so similar in method and conclusion that to choose one over the other would be to split hairs. *See Associates Commercial Corp. v. Rash,* — U.S. ——, ——, 117 S.Ct. 1879, 1886, 138 L.Ed.2d 148 (1997).

Chase concedes that its claim exceeds the value of its collateral but argues that its claim is secured only by the Debtor's principal residence, and, therefore, 11 U.S.C. § 1322(b)(2) prevents modification.

## THE EXTENT OF CHASE'S SECURED CLAIM

The Bankruptcy Code provides in pertinent part that a chapter 13 plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence...." 11 U.S.C. § 1322(b)(2)(1994). Thus, the Debtor may modify Chase's rights unless Chase has taken a security interest only in the Debtor's residential real property. However, if the security interest conveyed in the mortgage is construed to extend to property in addition to the Debtor's personal residence, Chase loses the anti-modification protection of 11 U.S.C. § 1322(b)(2). This issue has been the subject of considerable litigation and numerous conflicting decisions by the courts.

 Where a home mortgage recites a security interest in collateral that is an incident of the real property securing the mortgage lien, no additional security interest exists and the creditor retains protection against modification. *Allied Credit Corp. v. Davis (In re Davis)*, 989 F.2d 208, 213 (6th Cir.1993); *In re French*, 174 B.R. 1, 7 (Bankr.D.Mass.1994); *In re Spano*, 161 B.R. 880, 887 (Bankr.D.Conn.1993); *Wright v. C & S Family Credit, Inc. (In re Wright)*, 128 B.R. 838, 843 (Bankr.N.D.Ga.1991). The fact that a mortgage recites the various property rights that are inextricably bound to the fee simple estate does not mean that the mortgagee has claimed a security interest in collateral other than the described real property. *In re Spano*, 161 B.R. at 884. Section 1322(b)(2) anti-modification protection remains if a security interest has been granted in additional collateral that is "nothing more than an enhancement which is or can, by agreement of the parties, be made a component part of the real property or is of little or no independent value." *In re French*, 174 B.R. at 7. *But see In re Hammond*, 27 F.3d 52, 58 (3d Cir.1994) (holding boilerplate reci-

tation of additional collateral "whether fixtures or not" takes security interest in personalty); *Sapos v. Provident Inst. of Sav.*, 967 F.2d 918, 925–26 (3rd Cir.1992) (same); *Wilson v. Commonwealth Mortgage Corp.*, 895 F.2d 123, 129 (3rd Cir.1990)(same).

 With few exceptions, state law determines the existence of property rights in assets of a debtor's estate in bankruptcy. *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979). It follows that whether an item of collateral is actually an interest incidental to real property ownership is a matter of state law. *In re Spano*, 161 B.R. at 884–85. However, the issue of whether the taking of a security interest in an asset is sufficient to deny a creditor the anti-modification protection of section 1322(b)(2) is a matter of federal bankruptcy law. *In re French*, 174 B.R. at 6–7.

## RENTS

 The mortgage in this case purports to grant to Chase a security interest in "all rents, issues, proceeds and profits accruing and to accrue from said premises, all of which are included within the foregoing description and the habendum thereof...." (Pretrial Order, Admitted Fact "H".) Florida law determines whether additional collateral recited in the mortgage is or could be a component part of the real property at issue.

 Both statutory and case law in Florida expressly provide that one aspect of real property is its potential for generating rent. This rule is implicit in Florida's Article 9 of the Uniform Commercial Code, which specifically excludes from secured transactions in personalty, "the creation or transfer of an interest in or lien on real estate, *including* a lease or rents thereunder...." Fla. Stat. Ann. § 679.104(10) (West 1990) (emphasis added). Clearly, rent generated by real property is an interest in real estate under subsection 679.104(10). *Weitzner v. Goldman (In re Kavolchyck)*, 154 B.R. 793, 798 (Bankr.S.D.Fla.1993) *aff'd, Barnett Bank v. Weitzner*, 164 B.R. 1018 (S.D.Fla.1994).

 Furthermore, real property law in Florida classifies the right to unaccrued or accruing rents as incorporeal hereditaments

or interests that pass or run with the land. *McBryde v. Lowe,* 163 So.2d 896, 899–900 (Fla.2d DCA 1964) (*quoting* 52 C.J.S. Landlord and Tenant § 518; *Lipschultz v. Robertson,* 407 Ill. 470, 95 N.E.2d 357 (Ill.1950); *First & Citizens Nat'l Bank v. Sawyer,* 218 N.C. 142, 10 S.E.2d 656 (N.C.1940)). The most persuasive view under bankruptcy case law is that if state law provides that rents are part of the debtor's residential property, a security interest in rents does not remove the mortgage from section 1322(b)(2) protection. *Allied Credit Corp. v. Davis (In re Davis),* 989 F.2d 208, 213 (6th Cir.1993); *In re Spano,* 161 B.R. 880, 886 (Bankr.D.Conn. 1993); *Dent v. Associates Equity Servs. Co., Inc. (In re Dent),* 130 B.R. 623, 628 (Bankr. S.D.Ga.1991); *Wright v. C & S Family Credit, Inc. (In re Wright),* 128 B.R. 838, 843 (Bankr.N.D.Ga.1991). *But see In re Jackson,* 136 B.R. 797, 802–03 (Bankr.N.D.Ill. 1992) (denying section 1322(b)(2) protection where rents were not incidents of real property because Illinois law did not entitle mortgagee to rents unless pledged in the mortgage).

Applying Florida law, the Court finds that the right to unaccrued or accruing rents generated by the Debtor's residence is an incorporeal hereditament of the real property and runs with the land. Bankruptcy case law instructs that if a lien on rents is indistinguishable from a lien on the real property that generates those rents, no additional collateral exists, and anti-modification protection remains. Thus, a security interest in rents does not preclude section 1322(b)(2) protection.

## FIXTURES

The mortgage in this case also purports to grant to Chase a security interest in "all gas, steam, electric, water and other heating, cooking, refrigeration, lighting, plumbing, ventilating, irrigating and power systems, machines, appliances, fixtures and appurtenances, which now are or may hereafter pertain to, or be used with, in, or on said premises, even though they be detached or detachable." (Pretrial Order, Admitted Fact "H".) The Debtor argues that this language results in the granting of a security interest in her refrigerator and kitchen stove, the type of additional collateral that precludes section 1322(b)(2) anti-modification protection. Chase asserts that because the two appliances are fixtures, they are components of the real property and do not constitute additional collateral.

Generally, a fixture is personal property that has become physically affixed to realty so that it is part of the real estate. *Commercial Fin. Co. v. Brooksville Hotel Co.,* 98 Fla. 410, 123 So. 814, 816 (Fla.1929); *Devlin v. The Phoenix, Inc.,* 471 So.2d 93, 95 (Fla. 5th DCA 1985); Black's Law Dictionary 638 (6th ed. 1990). A three-part test to determine whether personal property has become a fixture includes the following criteria: (1) whether the item has been annexed to the realty; (2) whether the item is appropriately applied to the use or purpose of that part of the realty to which it is connected; and (3) whether the party making the annexation intended the item to be a permanent accession. *Commercial Fin. Co. v. Brooksville Hotel Co.,* 98 Fla. 410, 123 So. 814, 816 (Fla.1929); *Sears, Roebuck & Co. v. Bay Bank & Trust Co.,* 537 So.2d 1041, 1042–43 n. 3 (Fla. 1st DCA 1989). The intention of the party making the annexation is the primary criterion; method of annexation and the character of the article annexed are factors to determine intent. *Sears, Roebuck & Co.,* 537 So.2d at 1043 n. 3.

The Debtor's argument that the stove and refrigerator are movable personal property is far more persuasive than Chase's theory that these appliances are fixtures because they are attached to a fuel source in propane gas tanks and electrical outlets. The Debtor, who annexed the property, testified that she plans to take the two appliances with her in the event she moves, thus establishing that the stove and refrigerator were not intended as permanent accessions. Furthermore, the evidence clearly establishes that neither the stove nor the refrigerator is permanently attached to the real property. In cases dealing with similar types of personalty, courts have ruled that such appliances are not fixtures. *See, e.g., In re Gray,* 77 B.R. 970, 971 (Bankr.S.D.Fla.1987) (finding

that a free-standing oven, dishwasher and refrigerator were not fixtures encumbered by a mortgage lien); *Sears, Roebuck & Co. v. Bay Bank & Trust Co.,* So.2d 1041, 1042 (Fla. 1st DCA 1989) (concluding that refrigerators, ranges and dishwashers were not fixtures).

■ Thus, under Florida law, the refrigerator and stove are not fixtures that are inextricably bound to the real property. The question remains, however, whether Chase's security interest in appliances that are "detached or detachable," *i.e.,* the Debtor's stove and refrigerator, deprives Chase of section 1322(b)(2) anti-modification protection pursuant to federal bankruptcy law.

■ The answer to that question is "no" for two reasons. First, many bankruptcy courts have adopted the rule that components of the real property or items with little or no independent value are not, in fact, additional collateral that precludes section 1322(b)(2) protection. *In re French,* 174 B.R. at 7. While it is true that the items in this case are not actually components of the real property, it is significant that neither party offered any evidence that the stove or refrigerator had independent value to which a security interest could attach. Chase's purported security interest in the items is not perfected under state law because no proper filing under Florida's Uniform Commercial Code was made. *See,* Fla. Stat. Ann. § 679.302 (West 1990); *In re Gray,* 77 B.R. 970, 971 (Bankr.S.D.Fla.1987) (holding that because the mortgagee did not file a financing statement satisfying Uniform Commercial Code requirements, its mortgage claiming a security interest in fixtures did not encumber the oven, dishwasher, and refrigerator deemed by the Court to be personalty). The Debtor may not only claim the stove and refrigerator as exempt personal property, but may also avoid Chase's purported nonpossessory, nonpurchase-money security interest in household goods to the extent it impairs an exemption. 11 U.S.C. § 522(b), (d)(3), & (f)(1)(1994).

Many courts finding only nominal or *de minimus* value in collateral have concluded that no additional security interest exists. *Lee v. Home Savs. of America (In re Lee),* 215 B.R. 22, 26 (9th Cir. BAP 1997) (stating "additional collateral" was worthless because security interest was unperfected and bankruptcy trustee could therefore avoid mortgagee's lien); *Citicorp Mortgage, Inc. v. Kane (In re Hirsch),* 166 B.R. 248, 254 (E.D.Pa.1994) (holding that home mortgage was entitled to section 1322 protection despite the taking of a security interest in personalty because there was no evidence as to the value of the collateral); *PNC Mortgage Co. v. Dicks,* 199 B.R. 674, 682 (N.D.Ind.1996) (asserting that where collateral listed in the mortgage had little independent value relative to the realty, no additional security interest was taken); *In re Smith,* 176 B.R. 298, 302 (Bankr.D.N.H.1994) (stating that appliances included in an appraisal of a mobile home were enhancements to realty with little or no independent value); *In re Williams,* 109 B.R. 36 (Bankr.E.D.N.Y.1989) (observing that security interest in refrigerator, window shades, and other fixtures was so nominal in value as to have no significant meaning). *But see In re Graham,* 144 B.R. 80, 84 (Bankr.N.D.Ind.1992) (holding irrelevant the fact that lien is economically worthless; the issue is a lien's existence and not its economic value).

■ The second reason is that permitting the modification of Chase's secured claim under the facts of this case undermines the obvious Congressional intent to prohibit modification of home mortgages through the provisions of 11 U.S.C. § 1322(b)(2). This section's "secured-only" clause was intended by Congress to extend anti-modification protection to home lenders as opposed to other types of creditors who take security interests in personal residences to secure debt unrelated to the purchase of the residence, such as debt incurred for extraneous consumer purchases that also serve as security. *In re Cotton,* 199 B.R. 967, 969 (Bankr.D.Neb. 1996); *PNC Mortgage Co.,* 199 B.R. at 681.

To interpret the protection of section 1322(b)(2) as particularly applicable to purchase money mortgagees like Chase is consistent with those cases holding that only security interests properly perfected under Article 9 are relevant in denying such protec-

tion. *See, e.g., In re Reeves,* 65 B.R. 898, 901 (N.D.Ill.1986) (distinguishing, under section 1322, between a security interest attaching only to real property under real estate law and a security interest created under Article 9 of the Uniform Commercial Code); *In re Cotton,* 199 B.R. 967, 968–69 (Bankr.D.Neb. 1996) (finding vendor of personal property annexed to real property had a purchase money security interest in goods in addition to security interest in residence and was thus not entitled to section 1322(b)(2) protection); *Wright v. C & S Family Credit, Inc. (In re Wright),* 128 B.R. 838, 843 (Bankr.N.D.Ga. 1991) (holding no security interest in personalty arose even if security deed pertaining to residence did inadvertently describe items of personalty).

## CONCLUSION

The Court concurs with the reflections of Judge Lundin, who has previously written that, unfortunately, the wording of section 1322(b)(2) encourages debtors "to microscopically parse the language of every mortgage instrument in search of errant appurtenances, hereditaments, and other morsels of unreal collateral. . . ." 1 Keith M. Lundin, Chapter 13 Bankruptcy § 4.44 (2nd ed. 1994). However, the rigorous scrutiny to which the instant mortgage has been subjected proves only that the instrument more particularly describes either real estate interests incidental to the residence itself or items of personalty lacking independent value apart from it.

Therefore, for the reasons stated, Chase is the holder of a fully secured claim, secured only by the Debtor's personal residence as provided in 11 U.S.C. § 1322(b)(2) and may not be modified except as provided by 11 U.S.C. § 1322(b)(5).

IT IS SO ORDERED.