In the
United States Court of Appeals
For the Seventh Circuit

Nos. 99-1883 & 99-2092

Medcom Holding Company,

Plaintiff-Appellant, Cross-Appellee,

v.

Baxter Travenol Laboratories, Inc.,
and Medtrain, Inc.,

Defendants-Appellees, Cross-Appellants.

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 87 C 9853--Suzanne B. Conlon, Judge.

Argued October 25, 1999--Decided December 23, 1999

Before Easterbrook, Manion, and Rovner, Circuit Judges.

Easterbrook, Circuit Judge.  After twelve years of litigation, which have witnessed three jury trials and two prior appeals, this complex commercial case is nearing its end. Medcom Holding Co. v. Baxter Travenol Laboratories, Inc., 106 F.3d 1388 (7th Cir. 1997), and its predecessor, 984 F.2d 223 (7th Cir. 1993), lay out the details. All that matters for current purposes is that Medcom Holding ("MHC") has recovered a judgment of about $7 million as damages for misrepresentations Baxter made in connection with the sale of a line of business to MHC in 1986. MHC then sought attorneys' fees on the strength of this indemnity clause in its contract with Baxter:

   [Baxter agrees] to pay, perform and
   discharge and indemnify and hold [MHC]
   harmless from and against any loss, damage
   or expense (including reasonable attorneys'
   fees) . . . resulting from (i) any breach
   by [Baxter] of this Agreement: [or] (ii)
   any inaccuracy in or breach of any of the
   warranties, representations, covenants or
   agreements made by [Baxter] herein, in any
   Schedule hereto, or in any other
   certificate, document, instrument or
   affidavit required to be furnished by

> [Baxter] to [MHC] in accordance with the
> provisions of this Agreement ... .

Baxter concedes that MHC is entitled to recover reasonable attorneys' fees under this language, but the parties could not agree on the appropriate amount. The district court awarded MHC approximately $4.3 million for fees and expenses, plus $1.5 million in prejudgment interest. 1999 U.S. Dist. Lexis 499 (N.D. Ill. Jan. 11, 1999). MHC contends that the principal amount is too low; Baxter insists that it is too high and that prejudgment interest is unavailable. We begin with the dispute about interest.

Although the suit began under the federal securities laws, MHC ultimately recovered under Illinois law, which also supplies rules for the meaning and enforcement of the indemnity agreement. The district court asked whether prejudgment interest is available under 815 ILCS 205/2, a statute that has been understood to allow prejudgment interest on damages for breach of contract only when the amounts are "fixed or easily computed" prior to judgment. See, e.g., National Wrecking Co. v. Coleman, 139 Ill. App. 3d 979, 984, 487 N.E.2d 1164, 1167 (1st Dist. 1985); Richman v. Chicago Bears Football Club, Inc., 127 Ill. App. 3d 75, 77-78, 468 N.E.2d 487, 489-90 (1st Dist. 1984). Relying on South Bend Lathe, Inc. v. Amsted Industries, Inc., 925 F.2d 1043, 1048-49 (7th Cir. 1991), the district judge held that "Medcom's expenses were known and calculated at the time Medcom incurred them, justifying the award of prejudgment interest." MHC received and paid legal bills in determinate amounts; the total could be mechanically calculated, unlike (say) damages for lost profits. Baxter replies that, although what MHC paid its lawyers was easy to calculate, how much of this could be shifted to Baxter under the indemnity was debatable; to this MHC rejoins that legal uncertainty about the extent of liability does not defeat prejudgment interest under 815 ILCS 205/2 when the amount of the debt is mechanically ascertainable once legal issues have been resolved. E.g., First National Bank Co. v. Insurance Co. of North America, 606 F.2d 760, 769-70 (7th Cir. 1979) (Illinois law). We need not decide whether this rejoinder is sound, because the indemnity clause itself supports an award of interest.

Illinois does not treat 815 ILCS 205/2 as the sole authority for prejudgment interest. Contracting parties may supply their own rule of decision, as sec.205/2 itself makes clear by limiting its application to "the absence of an agreement between the creditor and debtor governing interest charges". See also, e.g.,

Blakeslee's Storage Warehouses, Inc. v. Chicago, 369 Ill. 480, 483, 17 N.E.2d 1, 3 (1938). We concluded in Balcor Real Estate Holdings, Inc. v. Walentas-Phoenix Corp., 73 F.3d 150 (7th Cir. 1996), that an indemnity agreement similar to the one between MHC and Baxter authorizes prejudgment interest. So clear was this that the losing party in Balcor conceded the point.

An indemnity clause is designed to make the wronged party whole--to put it in the same position it would have occupied had the other side kept its promise. Baxter must "hold harmless" MHC from "any loss" (emphasis added). One kind of loss covered by such a promise is the time value of money, which MHC has been unable to use while the litigation continues. The way to make the prevailing party whole is to provide prejudgment interest at the market rate (rather than the statutory 5% rate for cases in which the contracts are silent). See People ex rel. Hartigan v. Illinois Commerce Commission, 148 Ill. 2d 348, 406-07, 592 N.E.2d 1066, 1093 (1992); In re Estate of Wernick, 127 Ill. 2d 61, 87-88, 535 N.E.2d 876, 888 (1989). "Compensation deferred is compensation reduced by the time value of money." In re Milwaukee Cheese Wisconsin, Inc., 112 F.3d 845, 849 (7th Cir. 1997). As a result, "[p]rejudgment interest is an element of complete compensation". West Virginia v. United States, 479 U.S. 305, 310 (1987). See also, e.g., Milwaukee v. Cement Division of National Gypsum Co., 515 U.S. 189; General Motors Corp. v. Devex Corp., 461 U.S. 648 (1983); In re Oil Spill by the Amoco Cadiz, 954 F.2d 1279, 1331-35 (7th Cir. 1992). When the contract does everything possible to mandate complete compensation, the court should provide prejudgment interest at the market rate. So although we agree with the district court that MHC is entitled to prejudgment interest on its legal expenses, we disagree with the judge's decision to award only 5% simple interest. For reasons covered in Amoco Cadiz, the rate must be increased to what Baxter paid to its voluntary creditors during the same period (or, if that amount is unknown and the parties do not agree on a different rate, then to the prime rate).

This way of understanding prejudgment interest presages our approach to the many disputes about the principal amount due. The district judge worked through each of Baxter's objections as if operating under a fee-shifting statute rather than under a contract. MHC's law firms submitted separate bills for legal fees and expenses (such as photocopying and secretarial overtime). Illinois usually requires lawyers to roll overhead into the hourly rate for purposes of fee-shifting statutes and denies reimbursement

for separately-billed items such as delivery services and photocopies. See Kaiser v. MEPC American Properties, Inc., 164 Ill. App. 3d 978, 989-90, 518 N.E.2d 424, 431 (1st Dist. 1987); Losurdo Bros. v. Arkin Distributing Co., 125 Ill. App. 3d 267, 276, 465 N.E.2d 139, 145-46 (2d Dist. 1984). Cf. West Virginia University Hospitals, Inc. v. Casey, 499 U.S. 83 (1991). If the agreement between MHC and Baxter provided for "attorneys' fees" alone, then Illinois' definition of the term "attorneys' fees" might be conclusive (for the contract does not provide a different definition)--though it might not be, for Kaiser implies that overhead expenses may be recovered separately if the law firm shows that their reimbursement does not duplicate services provided as part of the hourly rate. But we need not pursue the matter, because Baxter promised to indemnify MHC for "any loss, damage or expense (including reasonable attorneys' fees)". That MHC has sought reimbursement for an "expense" that is not part of attorneys' fees can't justify denying reimbursement; it shows only that the contract covers more than what state law provides when the parties have not reached an agreement.

  Likewise with the district judge's conclusion that some of the lawyers' bills were not sufficiently detailed to show what services were provided, by whom, and at what hourly rate. Itemization is required under fee-shifting statutes, at least when the judge employs the "lodestar" method. Itemization is far less common when businesses pay their own lawyers, for having attorneys keep detailed records is a cost that many clients prefer to avoid. Balcor holds that an indemnity agreement similar to the one between MHC and Baxter has an implied limit to "reasonable" fees, but that reasonableness must be assessed using the market's mechanisms. 73 F.3d at 153. If attorneys submit bills that meet market standards of detail, their omission of information to which courts resort in the absence of agreement is of no moment. If the bills were paid, this strongly implies that they meet market standards. Ibid. The fees in dispute here are not pie-in-the-sky numbers that one litigant seeks to collect from a stranger but would never dream of paying itself. These are bills that MHC actually paid in the ordinary course of its business. The indemnity requires Baxter to make MHC whole, which means reimbursement for commercially-reasonable fees no matter how the bills are stated.

  Notice the qualification: commercially-reasonable fees. Balcor observes that courts interpolate a reasonableness requirement into indemnity agreements to guard against moral hazard--the tendency to take additional risks (or run up extra costs) if someone else pays the tab.

Instead of doing a detailed, hour-by-hour review after the fashion of a fee-shifting statute, therefore, the district judge should have undertaken an overview of MHC's aggregate costs to ensure that they were reasonable in relation to the stakes of the case and Baxter's litigation strategy (plus the fact that this case was tried three times and appealed twice before). One indicator of reasonableness is that MHC paid all of these bills at a time when its ultimate recovery was uncertain. Another is that MHC's total legal fees and expenses came to about $200,000 less than Baxter's. Because Baxter knew from the start that it would be required to foot its own legal bill, the amount it incurred cannot have been influenced by moral hazard. That MHC laid out less than Baxter implies that it, too, engaged in prudent cost control and therefore is entitled to full indemnity.

By and large, the district court's decision to treat a contractual indemnity just like a statute requiring fees to be shifted between strangers favored Baxter; in one respect, however, it worked to MHC's benefit. Baxter contends that MHC pursued numerous unsuccessful lines of attack: it demanded punitive damages but did not obtain them, tried without success to add a RICO theory, took a premature appeal that this court dismissed, and so on. As Baxter sees things, MHC cannot recover for any of these unsuccessful endeavors. Following the approach of fee-shifting statutes, however, the district court asked whether MHC's endeavors were "related" to those on which it succeeded. See Hensley v. Eckerhart, 461 U.S. 424, 435 (1983). The judge concluded that the premature appeal was sufficiently distinct that it could be called unrelated and sliced $117,834 from the bill. Other aspects of MHC's litigation strategy, however, the district court deemed close enough to issues on which MHC prevailed to be compensable under Hensley. As Baxter observes, however, the contractual indemnity does not duplicate the federal fee-shifting statute construed in Hensley. Under the contract the initial question is whether the outlay is one "resulting from" Baxter's misrepresentation or breach of the agreement. If the answer is yes, then the next issue is whether the attorneys' fees were reasonable. Baxter sensibly contends that a pursuit of punitive damages, or treble damages under RICO, cannot be traced to Baxter's breach of contract. Perhaps MHC had rights other than those given by contract, but the indemnity clause does not fund MHC's pursuit of those claims (and in the end MHC lost its non-contractual claims).

On remand the district court should jettison the analogy to fee-shifting statutes and ask the

questions posed by the parties' agreement: did the legal expenses result from Baxter's breach and, if so, were the fees reasonable (that is, were they fees that commercial parties would have incurred and paid knowing that they had to cover the outlay themselves)? Fees for the premature appeal might well have been caused by the breach; appellate jurisdiction can be uncertain when the district judge enters an ambiguous order, and a prudent lawyer will appeal rather than risk forfeiture. Thus an appeal that in retrospect was unnecessary might have been caused by Baxter's breach, and the expenses may well have been reasonable. Moreover, work done in briefing the premature appeal may well have carried over to the later appeal that we decided on the merits; MHC is entitled to compensation for the cost of that legal work, which had to be done eventually, even if the fees were incurred and paid a little sooner than they needed to be.

Enough has been said, we think, to illuminate the path on remand. Additional subjects on which the parties have locked horns in this court are just other applications of the choice between contractual and fee-shifting-statute approaches and therefore do not require separate discussion. Perhaps our framework will enable the parties at last to resolve the remaining issues amicably; but, if not, the district court should apply the contractual approach and bring this case to a long-overdue conclusion.

Vacated and Remanded