In the

# United States Court of Appeals

## For the Seventh Circuit

Nos. 10-2600 & 10-3571

BERNADINE E. MATTHEWS,

*Plaintiff-Appellant,*

*v.*

WISCONSIN ENERGY CORPORATION, INC.,
f/k/a WISCONSIN GAS COMPANY,

*Defendant-Appellee.*

Appeals from the United States District Court
for the Eastern District of Wisconsin.
No. 05-C-537—**J. P. Stadtmueller**, *Judge.*

ARGUED APRIL 1, 2011—DECIDED JUNE 1, 2011

Before EASTERBROOK, *Chief Judge*, and BAUER and EVANS, *Circuit Judges*.

EVANS, *Circuit Judge.* We last saw this case just over three years ago when we remanded it for further proceedings on a single issue—breach of contract. A grant of summary judgment against Matthews on retaliation under Title VII was affirmed. *Matthews v. Wis. Energy Corp., Inc.*, 534 F.3d 547 (7th Cir. 2008) (*Matthews I*).

Bernadine Matthews, a former employee of Wisconsin Energy Corporation, Inc. (WEC), sued WEC, alleging it violated a settlement agreement by breaching a "reference-request provision." On remand, a jury sided with WEC,[1] and now Matthews appeals for the second time.

Because a jury has rendered a verdict, we view the evidence in the light most favorable to that verdict. *Cruz v. Town of Cicero, Ill.*, 275 F.3d 579, 583 (7th Cir 2001). Here are the facts.

Matthews was employed by WEC from 1980 to 1999. When she left WEC, the parties entered into an agreement that included provisions regarding how WEC would respond to reference requests about her from prospective employers. In 2003, Matthews sued WEC alleging that it breached those provisions. To resolve that suit, the parties entered into a confidential settlement agreement (the Agreement) which addressed the information WEC would disclose to prospective employers:

> Wisconsin Gas agrees to respond to any request for a reference regarding Matthews in a manner that is consistent with the Wisconsin Gas policy in place regarding reference checks at the time. Wisconsin Gas will not respond to any request for a reference regarding Matthews by indicating that Matthews was terminated or fired from Wisconsin Gas.

WEC's policy regarding reference requests was to confirm that the individual had worked there, and to

---

[1]  WEC was formerly known as Wisconsin Gas Company.

provide the dates of employment, salary, and position. WEC would not release any subjective information about the former employee's performance.

In May 2005, Matthews filed this lawsuit, alleging that WEC breached the Agreement's reference-request provision by failing to properly verify her employment twice in 2004. A few days prior to filing the suit, Matthews, in an effort to find a new job, enrolled in a Social Security Administration (SSA) program called the "Ticket to Work Program" which allows disabled individuals receiving social security benefits to work while continuing to receive their benefits. *See generally*, The Ticket Program: What is the Ticket Program?, http:// www.yourtickettowork.com/program__info. (last visited May 19, 2011).

In accordance with the program, Matthews hired Howard Schwartz, President and CEO of Career Consulting Services of America (CCSA), a consultant who specializes in helping disabled individuals seek employment through the Ticket To Work Program. Matthews signed a SSA Consent and Release of Information form, giving Schwartz permission to talk to third parties about information he determined was relevant to her job search. She also signed a Confidential Information Release Authorization (CIRA), which was specific to Schwartz's company. Under the CIRA, she voluntarily consented to the disclosure to CCSA of information related to her personal background, health, employment, education and other data, and specifically granted Schwartz the right to contact her former employers to

elicit personal information that he deemed potentially helpful to the job search.

For several months, Schwartz had no luck finding Matthews a job. He approached her about his difficulties, and she claimed that WEC was blackballing her. When Schwartz asked why, Matthews said she was unable to discuss it because of the confidentiality provision in the Agreement. She directed Schwartz to reach out to her lawyer, Janet Heins. Schwartz called Heins who confirmed that Matthews had filed a lawsuit against WEC.

After his conversation with Heins, Schwartz revised Matthews' resume—removing her WEC employment entirely.[2] He sent the new resume to Heins and Matthews for authorization and also called Heins to ask if he could contact WEC for a reference. A few weeks later, Heins called Schwartz authorizing him to contact WEC. Schwartz then faxed a letter to Art Zintek, Vice-President of Human Resources at WEC.[3] The letter indicated that CCSA was contracted by the SSA to assist Matthews

---

[2] There was significant debate over whether Schwartz changed Matthews' resume as a result of a phone call with Lynne English, in-house counsel at WEC, as Matthews claims, or if he changed it prior to the call. WEC presented significant evidence that the document was changed before the call. Because we view the evidence in a light most favorable to the jury verdict, we assume the document was changed before Schwartz spoke with English.

[3] Schwarz claims he sent an identical letter in the mail several days earlier, but WEC never received it.

in her job search and requested that WEC confirm Matthews' work history at WEC and provide comments regarding her work performance. It also said that a release authorizing WEC to provide the information was enclosed, but Schwartz failed to include it.

When Zintek's office received the fax, due to Matthews' pending suit against WEC, it was forwarded to Lynne English in the Legal Department because she had handled the 2003 settlement agreement. In October 2005, English called Schwartz to discuss his letter. During the conversation, she told Schwartz that he had not included a release. Schwartz said he would send the release, but he also pushed English to answer his reference request over the phone. She testified that she told him she could not because "[Matthews] has sued us for how we respond to reference requests," or "we're in litigation with her." English also informed Schwartz that the written response to his reference request would only provide basic information and would not include the comments on Matthews' performance he had requested. After the conversation, Schwartz sent English the release form. WEC then mailed Schwartz a letter verifying Matthews' employment. At trial, Matthews admitted that WEC's response letter was substantially correct.

In the first round of this case, the district judge granted WEC's motion for summary judgment as to all claims and awarded it $173,232.44 in attorneys fees, pursuant to the fee-shifting provisions in the Agreement. Matthews appealed, and we affirmed the dismissal of all claims

except the breach of contract claim predicated on WEC's communication with Schwartz. We remanded the case for further proceedings on this issue and vacated the award of attorney's fees. *Matthews I*, 534 F.3d at 559-60.

On remand, a jury heard Matthews' breach of contract claim and returned a general verdict finding that WEC did not breach the Agreement. The district judge reinstated his 2007 fee award. WEC then filed a post-trial motion for additional attorney's fees under the Agreement, submitting redacted billing statements and declarations from its outside counsel authenticating them. The judge granted WEC's motion—finding the fees commercially reasonable and noting that WEC paid the legal bills before the verdict, without any assurance that they would be recouped—and awarded attorney's fees in the amount of $522,527.75 and nontaxable costs and expenses in the amount of $40,493.64.

On this appeal, Matthews argues that the judge erred by: (1) instructing the jury it could find that Matthews waived enforcement of the Agreement; (2) refusing to bifurcate the issues of breach and damages in the jury instructions; (3) allowing the case to go the jury with an agency instruction; and (4) awarding WEC attorney's fees and costs.

Matthews first claims that the judge erred when he instructed the jury that it could find Matthews "waived" enforcement of the Agreement by authorizing Schwartz to elicit personal information about her. We review a district judge's decision regarding jury instructions for abuse of discretion. *Consumer Products Research & Design,*

*Inc. v. Jensen*, 572 F.3d 436, 438 (7th Cir. 2009). Moreover, we will only grant a new trial if the verdict is against the clear weight of the evidence. *Tammi v. Porsche Cars North America, Inc.*, 536 F.3d 702, 708 (7th Cir. 2008).

Matthews makes two arguments with regard to wavier. First, WEC failed to plead waiver as an affirmative defense, and therefore the judge erred by allowing WEC to argue waiver and by including the instruction about waiver. WEC notes, however, that Matthews never pled—in her complaint or an amended complaint—the facts that give rise to the use of waiver as a defense. Instead, Matthews seems to argue that WEC should have preemptively pled wavier regarding the conversation between English and Schwartz which had not yet occurred when she filed her complaint. This argument is meritless. WEC was not obligated to forecast future events.

Furthermore, even if Matthews had included the phone conversation in her complaint or an amended complaint, we have previously held that the "rule that forfeits an affirmative defense not pleaded in the answer (or by an earlier motion) is, we want to make clear, not to be applied rigidly." *Herremans v. Carrera Designs, Inc.*, 157 F.3d 1118, 1123 (7th Cir. 1998). "The failure to plead an affirmative defense in the answer works a forfeiture only if the plaintiff is harmed by the defendant's delay in asserting it." *Carter v. United States*, 333 F.3d 791, 796 (7th Cir. 2003). Here, Matthews has not argued that she was prejudiced when the judge allowed WEC to argue waiver as a defense. WEC did not call any new witnesses

or introduce any new evidence as a result of the waiver defense. All of the evidence at issue was in the possession of Matthews' key witness, Schwartz. *See Williams v. Lampe*, 399 F.3d 867, 871 (7th Cir. 2005) (finding that where the plaintiff "does not suggest any prejudice to her from the defendants' delay [in asserting a defense] other than her subsequent preparation for trail, the court did not abuse its discretion in allowing the defense").

Matthews also argues that the judge erred when he gave a wavier instruction to the jury because the Agreement required waivers to be in writing. According to Matthews, the provision of the Agreement—"The terms of this Agreement may not be altered, amended, or waived except by another written agreement signed by the Parties"—should have rendered an instruction on wavier a no-no. We disagree.

WEC never contended that *the parties* met and agreed to modify the terms of the settlement agreement. The sort of waiver question put to the jury concerned *unilateral* waiver of entitlements under an *unchanged* contract. WEC did not contend (and the instruction did not ask the jury to find) that there had been a change in "the terms" of the agreement (which is what the change-only-in-writing clause covers). It is common for people to forego benefits that cannot be waived through a contract. For example: No employee can agree with the employer that the Age Discrimination in Employment Act will not apply to the job in question; the statute's benefits can't be waived or altered by contract. But anyone can retire whenever he wants, and in that sense waive the

statute's benefits. That is how the instruction here referred to "waiver." The jury was not asked to find that Matthews and WEC changed the terms of their agreement, so that in the future WEC could respond to inquiries by telling *other* potential employers about Matthews' litigation history or that Matthews had been fired. The question put to the jury was whether Matthews unilaterally authorized disclosure to Schwartz (who was acting as her agent) on this one occasion. In that sense, the giving of an instruction waiver was not error.

Matthews' second claim is that the judge erred "by refusing to bifurcate the issues of breach and damages in the substantive jury instructions." We review the judge's decision regarding jury instructions for abuse of discretion. *Jensen*, 572 F.3d at 438. In his instructions, the judge told the jury:

> In order to prevail on her breach of contract claim, Bernadine Matthews must prove each of the following elements by a preponderance of the evidence:
>
> First, the existence of a valid contract creating obligations between the parties;
>
> Second, a material breach of the contract by Wisconsin Energy, and
>
> Third, damages to Bernadine Matthews flowing naturally and probably from the breach.

Matthews argues that this instruction was improper because the jury had to find damages before it could find that a breach had occurred. But the instruction is

in line with the elements of a breach of contract claim in Wisconsin. *See Matthews I,* 534 F.3d at 553 ("The elements for a breach of contract in Wisconsin are familiar; the plaintiff must show a valid contract that the defendant breached and damages flowing from that breach.") (citing *Northwestern Motor Car, Inc. v. Pope*, 51 Wis.2d 292, 296 (Wis. 1971)).

While we agree with Matthews that given the somewhat unusual fee-shifting provisions of the settlement agreement it might have been wiser to more clearly separate out the questions of breach and damages, we are mindful of our duty to view jury instructions as a whole. Jury instructions are considered "both in the context of the other instructions given and in light of the allegations of the complaint, opening and closing arguments and the evidence of record." *Lynch v. Belden & Co., Inc.*, 882 F.2d 262, 267 (7th Cir. 1989). Here, the judge also instructed the jury that it must determine whether WEC breached the settlement agreement, and that if it found a breach but her damages had no monetary value, it must return a verdict in her favor and award her nominal damages. With that being the case, we cannot conclude that the judge incorrectly instructed the jury on the issue of breach and damages.

Next, Matthews claims that the judge abused his discretion when he allowed the case to go to the jury with the instruction that it could find Schwartz was acting as Matthews' agent. Matthews argues that the evidence was insufficient to support an agency instruction. This argument fails for several reasons.

First, the agency instruction Matthews now challenges was submitted to the court in the parties' Joint Final Pretrial Report. WEC notes that—despite Matthews claim to the contrary—this is one of the jury instructions upon which the parties agreed. Second, although Matthews correctly states that she objected to the instruction, she misstates the reason for her objection. Matthews' objection acknowledges that:

> [O]ne might also view Howard Schwartz as Matthews' agent with the undertaking being that of placing her in employment. The evidence elicited by [WEC] . . . however, was designed to show that in requesting a reference from WEC, Schwartz was not acting on behalf of Matthews, but instead, at the behest of Attorney Heins.

In no way does this objection undermine the instruction on agency. In fact, it does exactly the opposite— Matthews' objection asserts that Schwartz is *her agent*, working on *her behalf*, and not at the behest of Heins.

Similarly, Matthews read into evidence a stipulation that presumed Schwartz was her agent: "[T]he defendant will not argue that Mr. Schwartz's status as Ms. Matthews' agent was negated by virtue of the fact that she had previously assigned her ticket to work to the Department of Vocational Rehabilitation." Matthews also signed CCSA's waiver, granting Schwartz the authority to elicit information on her behalf, which he did when he spoke to attorney English. Therefore, while we agree that these acknowledgments of agency are not dispositive of Schwartz's status as Matthews' agent, given the

evidence presented a jury could reasonably find that Schwartz was acting as Matthews' agent and that, consequently, WEC did not breach the Agreement.

Finally, Matthews claims that the district judge erred in awarding WEC $563,021.39 in attorney's fees and costs. We review a district court's award of attorney's fees and costs for abuse of discretion. *TruServ Corp. v. Flegles, Inc.*, 419 F.3d 584, 593 (7th Cir 2005). The award of attorney's fees is governed, in this case, by the Agreement, which states:

> [T]he breaching party will indemnify and hold the non-breaching party harmless for any costs, damages or expenses, including reasonable attorney's fees, arising out of the breach of the Agreement by that party, or arising out of any suit or claim to enforce the Agreement. The parties agree that in the event that one of the Parties hereto commences a lawsuit or other legal proceeding alleging that the other Party breached the Agreement, the prevailing Party in that action shall be entitled to recover her or its reasonable attorneys fees and expenses incurred in such lawsuit or legal proceeding from the non-prevailing Party.

The judge held that Matthews filed suit and lost when the jury found WEC did not breach the Agreement, and WEC was therefore entitled to reasonable attorney's fees under the Agreement. Matthews attacks the judge's award of attorney's fees on several levels.

Matthews first argues that the judge erred in granting WEC's motion for attorney's fees because the request

lacked any description of the work performed. Matthews, however, ignores the fact that this is a contractual fee-shifting case, not a statutory fee-shifting case. In *Medcom Holding Co. v. Baxter Travenol Labs., Inc.*, 200 F.3d 518, 520 (7th Cir. 1999), we held that fee-shifting contracts require "reimbursement for commercially-reasonable fees no matter how the bills are stated." Thus, the standard in a contractual fee-shifting case is a "commercially reasonable" standard, *Balcor Real Estate Holdings, Inc. v. Walentas-Phoenix Corp.*, 73 F.3d 150, 153 (7th Cir. 1996), and does not require courts to engage in "detailed, hour-by-hour review" of a prevailing party's billing records, *Medcom,* 200 F.3d at 521.

Matthews next argues that the fees are not commercially reasonable. In determining whether they are, a court will look to the aggregate costs in light of the stakes of the case and opposing party's litigation strategy. *Id.* Concerning the "stakes" in the suit, and Matthews' "litigation strategy," it is interesting to note that WEC's lawyer told us at oral argument, without contradiction from Matthews, that her final settlement demand was $500,000. That makes spending the kind of money WEC did to defend the case look a bit more reasonable. Had a more modest sum been the goal, the defense spending might also have been considerably less.

A willingness to pay is an indication of commercial reasonableness. *Balcor*, 73 F.3d at 153. Here, the district court correctly applied the commercial reasonableness standard to the facts of the case and found the fees reasonable. While the total attorney's fees in this case

are unquestionably, and unfortunately, very high, WEC presented evidence that it paid its legal fees before the jury reached a verdict, unsure if it would ever recover them. *See Kallman v. Radioshack Corp.*, 315 F.3d 731, 742 (7th Cir. 2002) (finding the prevailing party's payment of her legal bills to be "strong evidence of commercial reasonableness, which is all that is required" under a contractual indemnity clause). Matthews has offered no evidence to counter WEC's payment of the bills. Accordingly, WEC's attorney's fees are commercially reasonable.

Matthews also argues that the judge incorrectly granted WEC fees for the second summary judgment motion because they were not the prevailing party on that motion. Under Wisconsin law, however, a "prevailing party" is not required to win in "all respects." *Metavante Corp. v. Emigrant Savings Bank*, 2009 WL 4556121, at *3 (E.D.Wis. Nov. 27, 2009), *aff'd*, 619 F.3d 748 (7th Cir. 2010). "Where a party's claims 'arise out of a common core of facts,' a 'losing party is not entitled to a reduction in attorney's fees for time spent on unsuccessful claims, if the winning party achieved substantial success and the unsuccessful claims were brought and pursued in good faith.'" *Id*. Matthews does not argue that WEC brought the second motion for summary judgment in bad faith. Thus, as the judge noted, *Metavante* completely dismantles Matthews' argument with respect to motions on which WEC was unsuccessful.[4] WEC prevailed in the action,

---

[4] The judge also noted that the language of the Agreement allows the prevailing party to recover even for unsuccessful

(continued...)

and under the Agreement it is accordingly entitled to reasonable attorney's fees and costs.

Finally, Matthews argues that the award of attorney's fees was inequitable because she made a good faith claim, and she cannot afford to pay the fees. But, as the district judge noted, the fee-shifting provision of the Agreement does not provide an exception for financial hardship or good faith. Unless the provision is the product of unequal bargaining power, courts generally will not dispute the fairness of such provisions. *Berthold Types Ltd. v. Adobe Systems, Inc.,* 186 F. Supp. 2d 834, 837 (N.D.Ill. 2002) (citing *Medcom*, 200 F.3d at 520; *Balcor*, 73 F.3d at 153); *see, e.g., United States, for the use of C.J.C., Inc. v. Western States Mechanical Contractors, Inc.*, 834 F.2d 1533, 1548 (10th Cir. 1987) ("[W]here contracting parties have agreed that a breaching party will be liable for attorneys' fees, the purpose of the award is to give the parties the benefit of that bargain, and the court's responsibility is to enforce that bargain"). This is not a case in which one party had unequal bargaining power, and no equitable requirement applies to the attorney's fee under the Agreement. Therefore, the district judge correctly found that Matthews' final claim also fails.

---

[4] (...continued)

motions. We agree. Under the Agreement, the "prevailing Party in that action shall be entitled to . . . fees and expenses incurred in such lawsuit." Thus, the provision applies to all claims in the action and allows recovery on all fees and expenses in the lawsuit, regardless of the outcome of individual claims.

A moment ago, we noted that the fees here are "unquestionably, and unfortunately, very high." What else can one say about a staggering figure like $563,021.39 in a case like this? But whether even a portion of those fees are collectable is not a matter about which we can be concerned.

For these reasons, the judgment of the district court is AFFIRMED.