**COURT OF CHANCERY**
OF THE
**STATE OF DELAWARE**

TAMIKA R. MONTGOMERY-REEVES
VICE CHANCELLOR

Leonard Williams Justice Center
500 N. King Street, Suite 11400
Wilmington, Delaware 19801-3734

Date Submitted: July 12, 2018
Date Decided:  October 31, 2018

Kurt M. Heyman, Esquire
Aaron M. Nelson, Esquire
Heyman Enerio Gattuso & Hirzel LLP
300 Delaware Avenue, Suite 200
Wilmington, DE 19801

Eric Lopez Schnabel, Esquire
Robert W. Mallard, Esquire
Alessandra Glorioso, Esquire
Dorsey & Whitney LLP
300 Delaware Avenue, Suite 1010
Wilmington, DE 19801

RE:  ***W. Jerome Frautschi et al. v. Ecolab, Inc.***
Civil Action No. 12951-VCMR

Dear Counsel:

This letter opinion addresses Plaintiffs' Motion for Summary Judgment as it relates to the claims of the Pleasant T. Rowland Revocable Trust and the W. Jerome Frautschi Living Trust.[1]  For the reasons stated below, the Motion for Summary Judgment is granted in part and denied in part.

---

[1]     I address the claims of Plaintiff W. Jerome Frautschi in a separate letter opinion.

## I.    BACKGROUND

The facts in this opinion derive from the pleadings, the parties' submitted affidavits, and exhibits cited therein.[2]

There are four groups of key actors:  Ecovation, Inc. ("Ecovation" or the "Company") and Ecolab, Inc. ("Ecolab"); Diane C. Creel; W. Jerome Frautschi; and the Pleasant T. Rowland Revocable Trust and the W. Jerome Frautschi Living Trust (together, the "Trusts").  This action involves the Trusts' requests for indemnification from Ecolab.  The Trusts' relationship with Ecolab is based on substantial loans from the Trusts to the corporation's predecessor, Ecovation.

### A.    Ecovation Before the Merger

The corporation at the center of this dispute is Ecovation, a Delaware corporation that was in the business of providing sustainable wastewater treatment and renewable energy solutions.[3]  Ecolab, a Delaware corporation in the business of providing water, hygiene, and energy technologies, acquired Ecovation in 2008 through a merger.[4]

---

2    Ct. Ch. R. 56(c).

3    Compl. Ex. B ¶ 19.

4    Compl. ¶ 27; *id.* Ex. C.

Creel served as Chief Executive Officer, President, and Chair of the Board of Directors of Ecovation from May 2003 through February 2008.[5] When Creel joined Ecovation, it was struggling financially.[6] Frautschi, as trustee of one of the Trusts and as agent of the other,[7] caused the Trusts to extend a $30 million line of credit to the Company; this agreement was memorialized in the Line of Credit Agreement (the "LOC") in June 2004.[8] After Ecovation's Board of Directors unanimously approved the LOC, Frautschi joined the Board in May 2004, and he served in that capacity until he resigned in November 2005.[9]

The $30 million line of credit proved insufficient to resolve the Company's financial problems, and the Trusts increased the LOC five times over the next four years, eventually increasing the loan to $62 million in November 2007.[10] With each

---

[5]     Compl. ¶ 30; *id.* Ex. B ¶ 27.

[6]     *Id.* Ex. A ¶ 25.

[7]     Frautschi is Trustee for the W. Jerome Frautschi Living Trust. Compl. ¶ 155. His relationship to his wife's trust, the Pleasant T. Rowland Trust, is unclear. I presume an agency relationship. This presumption does not affect the issues addressed in this letter opinion.

[8]     *Id.* Ex. G.

[9]     Compl. ¶ 30.

[10]    Nelson Aff. Exs. J-M; *id.* Ex. N, at 1-2.

amendment, the Evocation Board acknowledged that the Trusts and their representatives had "acted in good faith at all times" and fully performed their obligations.[11]

## B. The Underlying Actions

The requests for indemnification stem from litigation filed against Creel, Frautschi, and the Trusts in the United States District Court for the Western District of New York (the "*ITV* Action") and in the New York Supreme Court (the "*Ahlers* Action").

### 1. The *ITV* Action

On May 27, 2008, an institutional investor, Industrial Technology Ventures LP ("ITV"), sued Creel, Frautschi, and the Trusts, asserting claims for breaches of fiduciary duties, lender liability for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, unjust enrichment, tortious interference with business relationships, securities fraud, common law fraud, and civil conspiracy.[12]  ITV alleged that while Frautschi and Creel were directors of Ecovation, they, together with the Trusts, schemed to "take advantage of the Company's precarious financial

---

[11]     *Id.* Ex. J § 3.8; *id.* Ex. K § 3.7; *id.* Ex. L § 3.7; *id.* Ex. M § 3.7; *id.* Ex. N § 3.7.

[12]     Compl. ¶ 7; *see generally id.* Ex. A.

position and looming default" on the LOC.[13]  ITV further alleged that the Trusts

were in a position of significant power because they could threaten to foreclose on

the LOC.[14]  The Trusts also owned a significant amount of stock and stock warrants

in the Company.[15]  Under the terms of the LOC, the Company issued warrants to the

Trusts to purchase shares of Company stock for $0.01 per share.[16]  Through the LOC

and the terms of the Trusts' loans to the Company, the Trusts increased their

ownership of Series A Preferred Stock to over fifty percent, also increasing their

already substantial influence.[17]  In 2007, allegedly after receiving inside information

from Creel regarding a potential merger, the Trusts purchased additional shares from

other investors, including ITV.[18]

In February 2008, Ecolab acquired Ecovation pursuant to a Merger

Agreement dated February 1, 2008.[19]  As a consequence of the merger, the Trusts

---

[13]     Compl. Ex. A ¶ 35.

[14]     *See, e.g., id.* ¶ 61.

[15]     *Id.* ¶¶ 26, 29.

[16]     *Id.* ¶¶ 64, 71.

[17]     *Id.* ¶ 71.

[18]     *See id.* ¶ 107.

[19]     Compl. Ex. C.

made a substantial profit on the shares they received through the LOC and the shares they had purchased from ITV.[20] The Trusts were also repaid the outstanding loan amounts related to the LOC. The ITV complaint followed.

### 2. Settlement of the *ITV* Action

In April 2016, the parties in the *ITV* Action reached an agreement in principle for settlement.[21] The total settlement amount would be $4.9 million; the parties apportioned $2.94 million to Creel, $960,000 to Frautschi, and $500,000 to each of the Trusts.[22] The parties conditioned settlement on Ecolab's full indemnification of Creel for her portion of the settlement.[23] This contingency reduced the certainty of settlement, and the district court set trial for January 2018.[24]

In October 2016, Ecolab denied Creel's demand for indemnification.[25] The parties in the underlying action therefore could not move forward with the negotiated

---

[20]    *Id.* Ex. A ¶ 128.

[21]    Compl. ¶ 84.

[22]    *Id.* Ex. F, at 1.

[23]    *Id.* at 1-2.

[24]    Compl. ¶ 16.

[25]    *See* Kearney Aff. Mot. for Summ. J. ¶¶ 34-35.

settlement.[26]  The parties agreed to modify the terms of the settlement to eliminate the indemnification contingency.  Specifically, the Trusts agreed to advance to Creel her portion of the settlement.[27]

To remove the contingency of indemnification from the settlement in the *ITV* Action, ITV agreed to reduce the settlement amount to $4.65 million, a difference of $250,000.[28]  The parties reduced the Trusts' portion of the settlement because the Trusts were assuming the risk that Creel may not be successful in her indemnification claim for her portion of the settlement.

On April 25, 2017, the parties signed a formal Settlement and Release Agreement (the "Settlement").[29]  Each of the Trusts paid $437,500 for its respective portion of the Settlement.[30]  The district court dismissed the underlying proceeding on May 1, 2017.[31]

---

[26]    *See* Compl. ¶ 92.

[27]    *See id.* Ex. F, at 1.

[28]    *See* Nelson Aff. Ex. V, at 2.

[29]    Nelson Aff. Ex. V.

[30]    *Id.* § 3(a), (b).

[31]    Compl. ¶ 120.

### 3.    The *Ahlers* Action

In addition to the *ITV* Action, a second action commenced in August 2008 in the New York Supreme Court when approximately 100 former common stockholders filed their complaint against Creel, Frautschi, the Trusts, Ecovation, and other defendants.[32]  This action was largely based on the same allegations and contained similar claims as the *ITV* Action.[33]

Ecolab provided advancement to Frautschi throughout the *Ahlers* action.[34]  In September 2016, all defendants prevailed on summary judgment in that action.[35] The New York Appellate Division, Fourth Department, affirmed the trial court's order on June 30, 2017.[36]  The parties filed no further appeals.[37]

---

[32]    Compl. ¶ 126; *see generally id.* Ex. B.

[33]    *See generally id.* Ex. B.

[34]    Compl. ¶ 133.

[35]    Nelson Aff. Ex. E.

[36]    *Id.*

[37]    Compl. ¶ 23.

### C. The Trusts' Demands for Indemnification and This Litigation

Shortly after the Actions were filed, the Trusts sent letters to Ecolab to provide notice of the Trusts' indemnification claims.[38] In those letters, the Trusts referenced the indemnification provision of the LOC:

> Except for harm arising from the [Trusts'] willful misconduct or wanton or malicious disregard of its rights, [Ecovation] hereby indemnifies and agrees to defend and hold each [Trust] harmless from any and all losses, costs, damages, claims and expenses of any kind suffered by or asserted against the Lender relating to claims by third parties arising out of the financing provided under the Loan Documents or related to any collateral . . . . This indemnification and hold harmless provision will survive the termination of the Loan Documents . . . .[39]

Ecolab responded by letter to the Trusts' demand related to the *ITV* Action. In that letter, Ecolab refused to indemnify the Trusts or provide a defense for them.[40] "[Ecolab did] not believe [the Trusts] are entitled to indemnification under any of the . . . agreements referenced in [the Trusts'] January 30, 2009 letter. . . . [Ecolab] thus reserve[d its] rights to contest whether [the Trusts] are entitled to

---

[38] Nelson Aff. Ex. Q (dated Sept. 3, 2008) ("This is a notice of an indemnification claim . . . ."); *id.* Ex. R (dated Jan. 30, 2009) ("This is notice of an indemnification claim . . . .").

[39] Compl. Ex. G § 6.6.

[40] Nelson Aff. Ex. S.

indemnification under the . . . agreements (including the [LOC]) referenced in [the Trusts'] letter . . . ."[41] It appears that Ecolab failed to respond with a similar letter to the Trusts' request for indemnification for the *Ahlers* Action.

The Trusts, together with Frautschi, filed this action on November 30, 2016.[42] On September 19, 2017, they filed their Verified Amended and Supplemental Complaint (the "Complaint").[43]

## II. ANALYSIS

In their Motion for Summary Judgment, Frautschi and the Trusts (together, the "Frautschi Parties") seek summary judgment on all counts of the Complaint, including payment of the Trusts' defense costs in the *ITV* and *Ahlers* Actions, full indemnification of the Trusts' portions of the Settlement, and attorneys' fees in this action.[44]

---

[41]     *Id.*

[42]     D.I. 1.

[43]     D.I. 44.

[44]     The Frautschi Parties also seek (1) full indemnification of Frautschi's portion of the Settlement and (2) reimbursement of certain defense costs for Frautschi. Compl. Counts I, III, IV. I address those portions of their motion in a separate letter opinion.

### A. Standard of Review

Summary judgment will be "granted if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[45] The movant bears the initial burden of demonstrating that there is no question of material fact.[46] When the movant carries that burden, the burden shifts to the nonmoving party "to present some specific, admissible evidence that there is a genuine issue of fact for a trial."[47] When considering a motion for summary judgment, this Court must view the evidence and the inferences drawn from the evidence in the light most favorable to the nonmoving party.[48] Even so, the non-moving party may not rely on allegations or denials in the pleadings to create a material factual dispute.[49]

---

[45] *Twin Bridges Ltd. P'ship v. Draper*, 2007 WL 2744609, at *8 (Del. Ch. Sept. 14, 2007) (citing Ct. Ch. R. 56(c)).

[46] *Deloitte LLP v. Flanagan*, 2009 WL 5200657, at *3 (Del. Ch. Dec. 29, 2009).

[47] *Id.* (citing *Watson v. Taylor*, 829 A.2d 936 (TABLE), 2003 WL 21810822, at *2 (Del. Aug. 4, 2003)).

[48] *Judah v. Del. Tr. Co.*, 378 A.2d 624, 632 (Del. 1977); *Fike v. Ruger*, 754 A.2d 254, 260 (Del. Ch. 1999), *aff'd*, 752 A.2d 112 (Del. 2000).

[49] Ct. Ch. R. 56(e).

A.    **The Trusts' Defense Costs in the *ITV* and *Ahlers* Actions**

The Trusts contend that Ecolab must indemnify them in the *ITV* and *Ahlers*

Actions because Ecolab failed to meet its duty to defend the Trusts.[50]

1.    **Wisconsin Law Governs the LOC**

Under the terms of the LOC, Wisconsin law governs Ecolab's contractual

obligation to defend the trusts.[51]  Under Wisconsin law, to initiate the indemnitor's

duty to defend, the indemnitee is required to "effectuate[] a tender of defense."[52]  "A

tender of defense occurs once an [indemnitor] has been put on notice of a claim

against the [indemnitee]."[53]

The Supreme Court of Wisconsin has held that after the indemnitor receives

the tender of defense, "[i]f there is any doubt about the [indemnitor's] duty to defend,

[that doubt] must be resolved in favor of the [indemnitee]."[54]  "[T]hese holdings

specifically apply to the question of whether coverage exists under a contract, [and]

---

[50]    Pls.' Opening Br. 36-47.

[51]    Compl. Ex. G § 6.10.

[52]    *Towne Realty, Inc. v. Zurich Ins. Co.*, 548 N.W.2d 64, 66 (Wis. 1996).

[53]    *Towne Realty*, 548 N.W.2d at 67.

[54]    *Sch. Dist. of Shorewood v. Wausau Ins. Cos.*, 488 N.W.2d 82 (Wis. 1992); *Elliott v. Donahue*, 485 N.W.2d 403, 407 (Wis. 1992).

underlying these decisions is the general realization that the [indemnitor] is in a superior position to the [indemnitee] in relation to the formation and interpretation of the . . . contract."[55]

> [I]f it is unclear or ambiguous whether the [indemnitee] wishes the [indemnitor] to defend the suit, it becomes the responsibility of the [indemnitor] to communicate with the [indemnitee] before the [indemnitor] unilaterally forgoes the defense. This places the "burden of ensuring clear communication between the [indemnitor] and [indemnitee] on the [indemnitor], who is better positioned, in terms of expertise and resources, to manage such a task."[56]

If the indemnitor believes the claims are not covered by the agreement, then the indemnitor may issue a reservation of rights letter.[57] In addition to issuing the reservation of rights letter, the indemnitor should provide an initial defense and then commence a separate declaratory action to resolve whether the claims are covered.[58]

The Supreme Court of Wisconsin has held that the duty to defend is triggered by a single covered claim. In *Estate of Kriefall v. Sizzler USA Franchise, Inc.*, the

---

[55]  *Towne Realty*, 548 N.W.2d at 67.

[56]  *Id.* (footnote omitted) (quoting *White Mountain Cable Constr. Co. v. Transamerica Ins. Co.*, 631 A.2d 907, 910 (N.H. 1993)).

[57]  *Newhouse v. Citizens Sec. Mut. Ins. Co.*, 501 N.W.2d 1, 6 (Wis. 1993).

[58]  *MillerCoors LLC v. Millis Transfer Inc.*, 900 N.W.2d 343 (TABLE), 2017 WL 2131323, at *4 n.6 (Wis. Ct. App. May 16, 2017).

Supreme Court affirmed the trial court's grant of summary judgment for the

indemnitee regarding whether the indemnitor breached its duty to defend:

> When discussing an alleged breach of the duty to defend under an indemnification agreement, we have noted that an indemnitor's duty to defend does not depend on the merits of the claim asserted. Instead, the duty to defend arises when potential liability is asserted against the indemnitee. Indemnitors who deny their responsibility after tender of a potential suit or liability "cannot subsequently be allowed to turn around and evade the consequences which their own conduct and negligence have superinduced."
>
> [The indemnitor's] conduct showed that it ignored its duty to defend, as well as its duty to indemnify under the Hold Harmless Agreement. The Hold Harmless Agreement explicitly states that [the indemnitor] promised to defend [the indemnitee] "from all actions, suits, claims and proceedings." Accordingly, regardless of [the indemnitee's] ultimate liability, [the indemnitor] was obligated to honor its duty to defend upon [the indemnitee's] tender of a claim against it for acts or omissions that were *arguably within the purview of the Hold Harmless Agreement.*[59]

To establish whether an indemnitor has breached its duty to defend, the court

"compare[s] the allegations contained within the four corners of the complaint to the

---

[59]    816 N.W.2d 853, 869-70 (Wis. 2012) (emphasis added) (citing *Elliott v. Donahue*, 485 N.W.2d 403, 407 (Wis. 1992); *Barrons v. J.H. Findorff & Sons, Inc.*, 278 N.W.2d 827, 832 (Wis. 1979)) (quoting *Deminsky v. Arlington Plastics Mach.*, 657 N.W.2d 411, 426 (Wis. 2003)).

terms of the parties' contract. In addition, the allegations in the complaint are to be liberally construed in favor of the indemnitee."[60] If one claim is arguably within the purview of the agreement, then the indemnitor must defend the entire case.[61]

Where an exception limits the duty to indemnify, that limitation presumptively applies only to the duty to indemnify and not to the duty to defend.[62] For example, in *Estate of Kriefall*, the Supreme Court of Wisconsin held that a limitation referring to "[c]laims . . . caused by the negligent acts or omissions of [indemnitee]" did not limit the indemnitor's duty to defend the claims based on alleged negligence; the limitation applied only to the duty to indemnify.[63] To limit the duty to defend, the limitation must unambiguously refer to allegations.[64] The court "will not read words into the contract that the parties opted not to include."[65]

---

[60] *MillerCoors*, 2017 WL 2131323, at \*3 (citing *Water Well Sols. Serv. Grp. Inc. v. Consol. Ins. Co.*, 881 N.W.2d 285, 291 (Wis. 2016)).

[61] *Id.* at \*6; *see Fabco Equip., Inc. v. Kreilkamp Trucking, Inc.*, 841 N.W.2d 542, 548-49 (Wis. Ct. App 2013).

[62] *See MillerCoors*, 2017 WL 2131323, at \*5.

[63] 816 N.W.2d at 865, 869.

[64] *MillerCoors*, 2017 WL 2131323, at \*5 (comparing "negligence" and "alleged negligence").

[65] *Id.* (quoting *Ash Park, LLC v. Alexander & Bishop, Ltd.*, 866 N.W.2d 679, 689 (Wis. 2015)).

"When an insurer breaches a duty to defend its insured, the insurer is on the hook for all damages that result from that breach of its duty."[66] The Supreme Court of Wisconsin explained,

> [A] party aggrieved by an [indemnitor's] breach of its duty to defend is entitled to recover all damages naturally flowing from the breach . . . . Damages which naturally flow from an [indemnitor's] breach of its duty to defend include: (1) the amount of the judgment or settlement against the insured plus interest; (2) costs and attorney fees incurred by the insured in defending the suit; and (3) any additional costs that the insured can show naturally resulted from the breach.[67]

### 2. Ecolab's Duty to Defend

The Trusts sent letters a few months after the start of each of the Actions. These letters informed Ecolab that the Trusts "claim indemnification under the [LOC] for all obligations and expenses incurred by them in connection with the . . . lawsuit . . . , to the full extent such indemnification is available."[68] The letters informed Ecolab that litigation was pending against the Trusts and identified the basis of their right to indemnification.[69] These letters were sufficient to put Ecolab

---

[66]     *Maxwell v. Hartford Union High Sch. Dist.*, 814 N.W.2d 484, 496 (Wis. 2012).

[67]     *Id.* (omission in original) (quoting *Newhouse*, 501 N.W.2d at 6).

[68]     Nelson Aff. Ex. Q, at 2; *id.* Ex. R, at 2.

[69]     *See id.* Exs. Q, R.

on notice of the claims against the Trusts, and the Trusts therefore effectuated tenders of defense.

Regarding the *ITV* Action, Ecolab responded to the tender of defense by issuing a reservation of rights letter.[70] After issuing this letter, Ecolab took no further action—it failed to provide a defense for the Trusts in the *ITV* Action, and it failed to seek a declaratory judgment to determine whether it must provide a defense.[71] Regarding the *Ahlers* Action, Ecolab took no action. It did not provide a defense for the Trusts, nor did it issue a reservation of rights letter.

Ecolab argues that the Trusts elected to retain their own counsel and that this election provides evidence that the Trusts did not demand a defense from Ecolab.[72] Ecolab, however, fails to point to any authority to support this conclusion.[73] The Trusts' self-help measure of retaining its own counsel does not absolve Ecolab of its duty to defend.[74] Further, if it was unclear or ambiguous whether the Trusts wished

---

[70] *See id.* Ex. S.

[71] Compl. ¶ 62.

[72] Def.'s Opp'n Br. 49.

[73] *See id.* at 49-50.

[74] *See Deminsky*, 657 N.W.2d at 425-26 (citing *Ill. Cent. R.R. v. Blaha*, 89 N.W.2d 197, 200 (Wis. 1958); *Newhouse*, 501 N.W.2d at 6).

Ecolab to defend the Trusts in the Actions, it was the responsibility of Ecolab to communicate with the Trusts. Wisconsin law places the burden of ensuring clear communication on Ecolab.[75]

Ecolab also argues that the duty to defend extends only to "covered" claims.[76] This argument misstates Wisconsin law, which states that a single covered claim triggers the duty to defend the entire case.[77] If the allegations within the four corners of the ITV or Ahlers Complaints, construed liberally in favor of the Trusts, arguably raise a reasonable inference that the claims arose "out of the financing provided under the [LOC],"[78] then the Actions trigger Ecolab's duty to defend under the LOC's indemnification provision.[79] In both the *ITV* and the *Ahlers* Actions, the plaintiffs' relevant claims stem from the allegation that the Trusts exercised control over Ecovation because the Trusts could threaten to foreclose on the LOC.[80] Because the alleged control arises from the terms of the LOC, I conclude that the

---

[75]     *Towne Realty*, 548 N.W.2d at 67.

[76]     Def.'s Opp'n Br. 33-35.

[77]     *Estate of Kriefall*, 816 N.W.2d at 869-70.

[78]     Compl. Ex. G § 6.6.

[79]     *See Estate of Kriefall*, 816 N.W.2d at 869.

[80]     Compl. Ex. A ¶¶ 141, 150, 159, 182; *id.* Ex. B ¶¶ 402, 411, 415, 440.

alleged control arises "out of the financing provided under the [LOC]."[81]   This alleged control plays a role in multiple claims against the Trusts in the *ITV* Action.[82] The same is true for the *Ahlers* Action.[83]  The Trusts' ability to foreclose on the LOC arose out of the financing provided under the LOC.[84]  Construing the allegations liberally in favor of the Trusts in accordance with Wisconsin law, I conclude that the claims arguably arose "out of the financing provided under the Loan Documents."[85]

The indemnification provision has an exception "for harm arising from the [Trusts'] willful misconduct or wanton or malicious disregard of [Ecovation's] rights."[86]  Ecolab focuses its argument on whether the underlying actions "[arose] out of the financing provided under the Loan Documents" and makes no argument that this exception to the indemnification provision applies.[87]  The court in the *Ahlers*

---

[81]     *Id.* Ex. G § 6.6.

[82]     *See id.* Ex. A ¶¶ 141, 150, 159, 182.

[83]     *See id.* Ex. B ¶¶ 402, 411, 415, 440.

[84]     *See id.* Ex. A ¶ 141.

[85]     *Id.* Ex. G § 6.6.

[86]     *Id.*

[87]     *Id.*; Def.'s Opp'n Br. 32-35, 38-39.

action granted summary judgment in the Trusts' favor,[88] and thus, the court made no finding of any harm, excepted or not. In the *ITV* Action, where the litigation ended in a settlement,[89] there also was no finding that any excepted harm occurred. Because the limitation to the indemnification provision does not unambiguously refer to allegations of harm—as opposed to actual harm—it does not limit the duty to defend. Therefore, the exception in the indemnification provision does not apply here.

Because the allegations in the complaints fall within the indemnification provision and because the excepted harm is not present, the indemnification provision applies. Ecolab had a duty to defend the Trusts in the *ITV* and *Ahlers* Actions. It failed to do so and, therefore, breached its duty.

Under Wisconsin law, when an indemnitor breaches its duty to defend, the indemnitee is entitled to recover "(1) the amount of the judgment or settlement against the [indemnitor] plus interest; (2) costs and attorney fees incurred by the [indemnitee] in defending the [underlying] suit; and (3) any additional costs that the

---

[88]     Nelson Aff. Ex. E.

[89]     *See id.* Ex. V.

[indemnitee] can show naturally resulted from the breach."[90]  These amounts must be reasonable.[91]

Here, Ecolab makes no arguments regarding the reasonableness of the Trusts' defense costs.[92]  Ecolab also fails to assert a genuine dispute of material fact related to its duty to defend.  Because there are no genuine disputes of material fact regarding Ecolab's duty to defend the Trusts in the *ITV* and *Ahlers* Actions and because the defense costs are reasonable, the Trusts are entitled to judgment as a matter of Wisconsin law.

The Trusts also seek prejudgment interest on defense costs expended since 2008.[93]  Under Wisconsin law, prejudgment interest should be awarded when (1) demand has been made and (2) the amount is determinable.[94]  "[A]ttorney

---

[90]  *Maxwell*, 814 N.W.2d at 496.

[91]  *See Kriefall*, 816 N.W.2d at 870.

[92]  The Trusts assert that their defense costs ("attorneys' fees and expenses") were reasonable.  Pl.'s Opening Br. 50.

[93]  *Id.*

[94]  *Chi. Title Ins. Co. v. Runkel Abstract & Title Co.*, 654 F. Supp. 2d 926, 928 (W.D. Wis. 2009); *U.S. Fire Ins. Co. v. Good Humor Corp.*, 496 N.W.2d 730, 740-41 (Wis. Ct. App. 1993) (citing *Olguin v. Allstate Ins. Co.*, 237 N.W.2d 694, 698 (Wis. 1976)).

fees . . . [become] determinable as soon as they [are] incurred."[95]  "[T]he burden of making the determination of the amount owed is on the party withholding payment."[96]  Wisconsin has an equitable policy supporting prejudgment interest because the "plaintiff should be compensated for the time value of the money he would have had if the payment had been made when due."[97]

Here, the Trusts made demand for their attorneys' fees when they put Ecolab on notice of the claims against the Trusts.  In those letters, the Trusts "claim[ed] indemnification under the [LOC] for all obligations and expenses incurred by them in connection with [the *ITV* and *Ahlers* Actions]."[98]  The letters are dated September 3, 2008 (for the *Ahlers* Action), and January 30, 2009 (for the *ITV* Action).[99]  Under Wisconsin law, the burden was on Ecolab to inquire as to any amounts it may have owed.[100]  It is, therefore, irrelevant that the Trusts did not make a second demand for

---

[95]    *Good Humor*, 496 N.W.2d at 741.

[96]    *Id.* (citing *Klug & Smith Co. v. Sommer*, 265 N.W.2d 269, 272 (Wis. 1978)).

[97]    *See Chi. Title Ins. Co.*, 654 F. Supp. 2d at 928-29 (quoting *Medcom Hldg. Co. v. Baxter Travenol Labs, Inc.*, 200 F.3d 518, 519 (7th Cir. 1999)).

[98]    Nelson Aff. Ex. Q, at 2; *id.* Ex. R, at 2.

[99]    *Id.* Ex. Q, at 1; *id.* Ex. R, at 1.

[100]   *Good Humor*, 496 N.W.2d at 741.

its attorneys' fees until June 2016.[101]  For these reasons, I award prejudgment interest at Wisconsin's statutory rate[102] from either the later of (1) the date of the demand[103] or (2) when the Trusts made payment.[104]

For the foregoing reasons, I grant the Frautschi Parties' Motion for Summary Judgment as to the Trusts' defense costs in the *ITV* and *Ahlers* Actions.

## B.    Indemnification for the Trusts' Portions of the Settlement

Under Wisconsin law, when an indemnitor breaches its duty to defend, the indemnitee is entitled to recover "the amount of the judgment or settlement against the [indemnitor]."[105]  Generally, the indemnitor who fails in its duty to defend cannot contest the reasonableness of the judgment or settlement.[106]  But when the indemnitor is denied the opportunity to participate in the settlement process, it is not "equitable to bind [the indemnitor] to the settlement agreement."[107]  In *Deminsky v.*

---

[101]    *See* Def.'s Opp'n Br. 57-58 (asserting that demand was made in June 2016).

[102]    *See* Wis. Stat. § 138.04.

[103]    *See* Nelson Aff. Ex. Q, at 1; *id.* Ex. R, at 1.

[104]    *See* Solheim Aff. Ex. 1; Kearney Aff. Att'ys' Fees and Expenses Exs. 1-3.

[105]    *Maxwell*, 814 N.W.2d at 496.

[106]    *See Deminsky*, 657 N.W.2d at 427-28.

[107]    *Id.* at 427.

*Arlington Plastics Machinery*, the Supreme Court of Wisconsin held that a settlement was unreasonable because the indemnitor did not know that settlement negotiations were in progress and had no "opportunity to challenge the reasonableness and validity of the settlement agreement."[108] The court remanded "for a limited trial . . . regarding the reasonableness of the settlement."[109]

The Frautschi Parties assert that Ecolab had multiple opportunities to participate in the settlement process but declined to do so.[110] The Frautschi Parties provide supporting evidence through an affidavit. The affidavit states that "Ecolab was kept advised on the status of settlement discussions, and given every opportunity to participate in that process."[111] Additionally, Ecolab's counsel participated in the mediation of the *ITV* Action.[112] The affidavit also refers to communications in April 2016 from counsel for the Frautschi Parties to Ecolab's counsel regarding settlement developments.[113]

---

[108]     *Id.* at 428.

[109]     *Id.*

[110]     Pl.'s Opening Br. 40.

[111]     Kearney Aff. Mot. for Summ. J. ¶ 22.

[112]     *Id.* ¶ 25.

[113]     *Id.* ¶ 30, 32.

Ecolab, on the other hand, asserts that counsel for Creel and counsel for the Frautschi Parties prevented Ecolab from participating in the settlement process.[114] Ecolab also presents supporting evidence through an affidavit. In that affidavit, counsel for Ecolab states that he suggested to counsel for the Frautschi Parties they jointly negotiate settlement with ITV and that the Frautschi Parties rejected his suggestions.[115] Additionally, Ecolab provides supporting evidence that the information Creel and the Frautschi Parties provided to Ecolab shortly before settlement negotiations concluded did not accurately reflect the terms of the Settlement.[116]

Here, the parties dispute whether Ecolab had the opportunity to participate in the settlement process and, if Ecolab had that opportunity, whether Ecolab declined to participate. I cannot decide this issue without weighing the evidence and

---

[114]  Def.'s Opp'n Br. 9.

[115]  Trevor Aff. ¶ 5.

[116]  *Id.* ¶¶ 7-8.

assessing credibility, which is improper at this stage.[117]  Thus, this issue constitutes a genuine dispute of material fact.[118]

### C.     Fees-on-Fees

The Trusts seek reimbursement of their legal fees in this case.  "The American Rule provides that parties to litigation typically are responsible for their own attorney fees."[119]  Under Wisconsin law, if parties contract for the award of attorneys' fees, then the court may deviate from the American rule.[120]  Courts "construe the contract language according to its plain or ordinary meaning.  'If the contract is unambiguous, [the] attempt to determine the parties' intent ends with the four corners of the contract . . . .'"[121]

---

[117]     *Cerberus Int'l , Ltd. v. Apollo Mgmt., L.P.*, 794 A.2d 1141, 1150 (Del. 2002).

[118]     I do not address Ecolab's reasonableness argument as it is contingent on a showing that Frautschi or the Trusts prevented Ecolab from participating in the settlement process.

[119]     *Estate of Kriefall*, 816 N.W.2d at 872.

[120]     *Id.*; *Colleran v. Wildes*, 886 N.W.2d 592 (TABLE), 2016 WL 4195354, at *6 (Wis. Ct. App. Aug. 9, 2016) ("We conclude that [fees-on-fees] are the legal consequence of the original wrongful act by M.D. Transportation in refusing to accept defense when tendered without obtaining a prior ruling on its obligation to defend.").

[121]     *Town Bank v. City Real Estate Dev., LLC*, 793 N.W.2d 476, 484 (Wis. 2010) (quoting *Huml v. Vlazny*, 716 N.W.2d 807, 820 (Wis. 2006)).

Here, Section 6.5 of the LOC states, "[Ecovation] will reimburse the [Trusts] for *all* reasonable attorneys' fees and *all* other reasonable costs, fees and out-of-pocket disbursements (including fees and disbursements of counsel) incurred by a [Trust] . . . in connection with the administration, defense and *enforcement*, of this [LOC] Agreement."[122] The plain language of the contract is unambiguous.

The Trusts are entitled to fees-on-fees in this case.[123] Therefore, I grant the Frautschi Parties' Motion for Summary Judgment as to the Trusts' claim for fees-on-fees.

III.   CONCLUSION

For the foregoing reasons, I GRANT the Frautschi Parties' Motion for Summary Judgment as to the Trusts' claims for its defense costs in the underlying Actions and for fees-on-fees, and I DENY the motion as to the claim for indemnification for the Trusts' portions of the Settlement. Trial shall focus on the

---

[122]   Compl. Ex. G § 6.5 (emphases added).

[123]   Ecolab argues that (1) an award of fees-on-fees is premature when the Frautschi Parties have not yet succeeded on their underlying claims and (2) the Trusts are not entitled to fees-on-fees for fees incurred from November 2016 through April 2017, when the Plaintiffs' original complaint asserted a different theory. Def.'s Opp'n Br. 56-57. Under the plain language of the LOC, these arguments fail.

following issue: whether the Trusts prevented Ecolab from participating in the

settlement process in the *ITV* Action.

**IT IS SO ORDERED**.

Sincerely,

*/s/Tamika Montgomery-Reeves*

Vice Chancellor

TMR/jp